# WHEELING.

## STATE OF WEST VIRGINIA *v.* DOUGLASS.

### Submitted June 25, 1886.—Decided July 7, 1886.

1. To convict one of murder it is not necessary, that malice should exist in the heart of the accused against the deceased. If the accused was guilty of striking with a deadly weapon another and of killing him, the intent and the malice may both be inferred from such act; and such malice may not be directed against any particular person, but is such as shows a "heart regardless of social duty and fatally bent on mischief." (p. 299.)

2. The second point in the syllabus in *Robinson's Case*, 20 W. Va. 713, approved. (p. 301.)

3. The third point in *Robinson's Case, supra*, approved. (p. 301.)

4. When there is an assumption of a fact in an instruction given to a jury, and the evidence, which is certified, is as to the correctness of the assumption so full and uncontradicted, as to necessitate the inference, that it was undisputed or tacitly admitted, the judgment will not be reversed, because such fact was so assumed to be true. Where an instruction in a murder case assumed as true, that the "blow" struck by the prisoner killed the deceased, and the evidence was certified, which showed, that the fact was not controverted, but the proof of such fact was full, and there was not a particle of evidence to the contrary, the judgment will

not be reversed and a new trial granted, because such fact was assumed to be true. (p. 301.)

5. An instruction which tells the jury, "if they believe from all the facts and circumstances of the case that the prisoner wilfully, maliciously, deliberately and premeditatedly struck the *blow* which killed the deceased, they must find him guilty of murder in the first degree," separating as it does, the "blow" from the character of the instrument with which it was inflicted, and the intent with which it was given, is erroneous, and for such error the judgment should be reversed, and a new trial granted, unless it appeared from the uncontradicted evidence certified that the instrument, with which the blow was struck, was of such a character, that the court could know that it was a deadly weapon. (p. 302.)

6. Where an erroneous instruction has been given to the jury, the presumption is, that the exceptor has been prejudiced thereby, and the judgment will be reversed for such cause, unless it clearly appears from the record, that the exceptor could not have been so prejudiced. (p 303.)

*C. Hall* for plaintiff in error.

*Alfred Caldwell*, Attorney General, for the State cited the following authorities ∴ 1 Hawkins ·(6th Eng. Ed.) 118 ; *Id.* 124–126; 1 East Crown Law 214; *Id.* 219; *Id.* 232, 233; 4 Blacks. 195 ; *Id.* 199, 209 (s. p.); 3 Chit. Cr. L. 727 ; Foster Cro. L. 256 ; 3 Gratt. 604 *et seq.*; *Id.* 431 ; 5 Bac. Abr. 763; Whar. Cr. L. 368 *et seq.*; Whar. Am. Law of Hom. 371, 372, 385 *et seq.*; 3 Gratt. 504; 20 W. Va. 713 ; 9 Humph. 664; 33 Gratt. 807; 11 Leigh 681.

JOHNSON, PRESIDENT :

On January 5, 1886, Lewis Douglass was in the circuit court of Kanawha county indicted for the murder of William Teal.   On the same day the prisoner appeared and moved to quash the indictment, which motion was overruled, and he pleaded not guilty.   On March 17, 1886, the trial on the issue was commenced, and on the 19th of the same month the jury returned a verdict of not guilty of murder in the first degree but guilty of murder in the second degree.   The prisoner moved the court to set aside the verdict and grant him a new trial, which motion the court overruled and sentenced the prisoner to the penitentiary of the State for the term of eighteen years.   During the trial the prisoner saved

three bills of exceptions; the first to the refusal of the court to give two several instructions asked by the prisoner; the second to the refusal of the court to set aside the verdict and grant him a new trial, and also to the refusal of the court to arrest judgment; the third to the giving of two several instructions to the jury at the instance of the State. To the judgment the prisoner obtained a writ of error.

The motion to quash was properly overruled, as the indictment is in the usual and proper form. The first instruction asked for by the prisoner and refused is as follows: "If the jury believe from the whole evidence in this cause, that the prisoner, Lewis Douglass, and the deceased, William Teal, were on good terms and on friendly relations at the time the killing was alleged to have been done, and that there was no malice existing between the prisoner, Lewis Douglass, and William Teal, the deceased, at the time of the alleged killing, then the jury can not find the prisoner, Lewis Douglass, guilty of murder either in the first or second degree." If this instruction had properly told the jury, that it was necessary, that it should appear to them, that the prisoner had done the act charged with malice, before they could convict him of murder either in the first or second degree, it would have been correct and should have been given. But did it so instruct the jury?

Where a homicide is proved, the presumption is that it is murder in the second degree. If the State would elevate it to murder in the first degree, she must establish the characteristics of that crime; and if the prisoner would reduce it to manslaughter, the burden of proof rests upon him. (*Cain's Case*, 20 W. Va. 679). Murder, says East, is the voluntary killing by any person under the king's peace of malice prepense or aforethought, either express or implied by law, the source of which said malice is not only confined to a particular ill will to the deceased, but is intended to denote, as Mr. Justice Foster expresses it, an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief. And therefore malice is implied from any deliberate cruel act against another, how-

ever sudden." (1 East's Crown Law 215, 235). "Words of reproach," says the same writer, "howsoever grievous are not provocation sufficient to free the party killing from the guilt of murder, nor are contemptuous or insulting actions or gestures without an assault upon the person, nor is any trespass against lands or goods. This rule governs every case, where the party killing upon such provocation made use of a deadly weapon or *otherwise* manifested an intention to kill or to do some great bodily harm. But if he had given the other a box on the ear or had struck him with a stick or other weapon not likely to kill, and had unluckily and against his intention killed him, it had been but manslaughter; for no malignant intention can be collected from such acts." (1 East Crown Law 233). Mr. Blackstone in his Comm., vol. 4 p. 199 says: "The killing must be committed with malice aforethought to make it the crime of murder. This is the great criterion which now distinguishes murder from other killing; and this malice prepense, *malitia præcogitata*, is not so properly spite or malevolence to the deceased in particular, as any evil design in general, the dictate of a wicked, depraved and malignant heart; * * and it may be either express or implied in law."

The instruction wholly disregards malice not particularly directed against the deceased, which might be the dictate of a depraved heart, "of a heart regardless of social duty and fatally bent on mischief." If a father with such a depraved heart should shoot into a crowd of persons and kill his own son, he would be guilty of murder, although he might love his son dearly, and there was no unfriendly feeling between them. This instruction says to the jury: "If you believe the prisoner and deceased were on friendly terms, and that there was no malice existing between them, you must find the prisoner not guilty." We have seen, that this instruction does not propound the law correctly. It was also well calculated to mislead the jury, as it was evident, that the word malice was used in the usual sense of malevolence, "ill feeling" or "ill will" toward a particular person and not of malice in its legal sense. The instruction was properly refused.

The second instruction asked for by the prisoner and refused by the court was as follows: "The court instructs the jury, that, if they shall believe from the whole evidence in the

case, that a reasonable doubt exists as to whether the prisoner, Lewis Douglass, was sane or not at the time of the commission of the alleged killing of William Teal, the deceased, then the prisoner, Lewis Douglass, is entitled to the benefit of the doubt and to an acquittal, if such doubt exists in the opinion of the jury." This instruction clearly does not propound the law correctly. In all cases of trial for crime where insanity is relied on as a defence, it must be made out to the satisfaction of the jury, and no mere doubt as to the sanity of the prisoner will entitle him to an acquittal. (*Boswell's Case*, 20 Gratt. 860; *Robinson's Case*, 20 W. Va. 74; *Baccigalupo's Case*, 33 Gratt. 807).

The first instruction asked by and given for the State is as follows: "If the jury believe from all the facts and circumstances in the case, that the prisoner wilfully, maliciously, deliberately and premeditatedly killed the deceased, they should find him guilty of murder in the first degree, although he was intoxicated at the time of the killing." This instruction was taken from the 3rd point of the syllabus in *Robinson's Case*, 20 W. Va. 713, and propounds the law correctly.

The second instruction for the State is: "If the jury believe from all the facts and circumstances in the case, that the prisoner wilfully, maliciously, deliberately and premeditatedly struck the blow which killed the deceased, they should find him guilty of murder in the first degree." The first objection to this instruction is, that it assumes as true, that the "blow" spoken of therein "killed the deceased." Where there is an assumption of a fact in an instruction given to the jury, and the evidence, which is certified, is as to the correctness of the assumption so full and uncontradicted as to necessitate the inference, that it was undisputed or tacitly admitted, the judgment will not be reversed because the fact was so assumed to be true. (*Sheff* v. *Huntington*, 16 W. Va. 307). There is some difficulty in determining from the bill of exceptions, whether all the facts are in the record or not. Each witness is named and the court certifies, that "he gave evidence tending to prove" certain facts, and then concludes such certificate, "and these being all the facts proved before the jury in behalf of the State and on behalf of the prisoner, the prisoner moved the court to instruct the jury," &c.

I think we may fairly conclude that all the evidence before the jury on the issue is certified. Considering the bill of exceptions as being a full certificate of the evidence, the fact, that the "blow" inflicted by a "stone" or "rock" thrown by the prisoner killed William Teal, is not disputed but is tacitly admitted, therefore the assumption by the instruction, that the "blow" killed the deceased, is not fatal to it, and the judgment would not be reversed and a new trial granted, because such fact was assumed to be true. Of course it was for the jury to decide, whether the "blow" killed the deceased or not; and they necessarily decided from the undisputed evidence, that it did.

But there is a much more serious objection to the instruction, that is, that it separates the *"blow"* from the *intent*, with which it was given. It is true that a man is presumed to intend that, which he does, or which is the immediate or necessary consequence of his act, and if a person with a deadly weapon in his possession without any or upon any slight provocation with such deadly weapon inflicts a mortal wound upon another, such person inflicting such wound is *prima facie* guilty of wilful, malicious, deliberate and premeditated killing, and the necessity rests upon him to show extenuating circumstances, and unless he proves such extenuating circumstances, or they appear from the case made by the state, he is guilty of murder in the first degree. (*Cain's Case*, 20 W. Va. 681). But that is a very different case from the one stated in the instruction, which entirely ignores the character of the instrument, with which the "blow" was struck. If "A." having a common rawhide in his possession inquired for "B." and finding him after several hour's search strikes him with the rawhide and accidentally kills him, although the jury might be fully convinced, that "A." "wilfully, maliciously, deliberately and premeditatedly struck the blow," which killed "B.," yet would it follow, that he *intended* the blow to kill him, and that he was therefore guilty of murder in the first or second degree? No one would believe from such a statement of facts that "A." intended to kill "B.," and that he was guilty of murder. From the use of such an instrument, one that was not deadly, one that would not be likely to kill, no intent to kill could be legally

inferred. Yet the instruction says to the jury, that if such a blow was struck "wilfully, maliciously, deliberately and premeditatedly," the defendant was guilty of murder. The effect of the instruction is to say that in any case, where one party deliberately, maliciously and premeditatedly inflicts a blow upon another, which kills him, without regard to the circumstances, under which the blow was struck, and without reference to the character of the weapon, with which it was given, such person so striking is guilty of murder. Such is not the law. If however the evidence were all certified as it is in this case, and there was no controversy about the character of the instrument, so that the court could see on inspection of the record that the instrument, with which the blow was struck, was of such a character as would be likely to produce death, that it was a deadly weapon, this Court would not set aside the verdict, because such instructions were given. In this case it is impossible for the Court to say whether the stone thrown was or was not a deadly weapon, that being a question for the jury. The instruction was clearly erroneous.

But it is asserted by the Attorney-General, that the prisoner was not injured by the instructions, as he was found not guilty of murder in the first degree, and the jury was instructed, that if he "willfully, maliciously, deliberately and premeditatedly struck the blow which killed the deceased," they should find him guilty in the *first* degree. The jury found the prisoner not guilty of murder in the first degree, but guilty of murder in the second degree. The rule in both civil and criminal courts is, that when an erroneous instruction has been given to the jury, the presumption is that the exceptor was prejudiced thereby; and the judgment will be reversed for this cause, unless it clearly appears from the record of the case, that the exceptor could not have been prejudiced by the giving of such erroneous instruction, in which case the judgment will not be reversed for said cause. It is impossible for us to say under the circumstances appearing in this case, that the prisoner was not prejudiced by the giving of the erroneous instruction; on the contrary we think he may have been so prejudiced. If the jury believed, that the blow was not struck with deliberation and premeditation but was

struck maliciously, they would have been authorized under such instruction without considering the character of the instrument or the motive, with which the blow was struck, while they found him not guilty of murder in the first degree, to have found him guilty of murder in the second degree, which they did.

For this error the judgment of the circuit court of Kanawha county is reversed, the verdict of the jury set aside and a new trial granted the prisoner.

REVERSED.   REMANDED.