# CHARLESTON.

## STATE v. YOUNG.

Submitted June 25, 1901. Decided November 16, 1901.

1. MURDER—*Innocent Person—Provocation.*
    If a person maliciously and without provocation fire a gun charged with a deadly load into a crowd regardless of consequences and kill an innocent bystander, he is guilty of murder, and it is for the jury to say from the facts and circumstances whether such killing was wilful, deliberate and premeditated. (p. 98).

2. SUSPENSION ORDER—*Prisoner's Presence.*
    A suspension order entered on motion of the prisoner after trial, verdict, judgment and sentence will not vitiate such trial, verdict, judgment or sentence, although such suspension order fail to show the presence of the prisoner in person at the time it was entered. (p. 99).

Error to Circuit Court, McDowell County.

Lewis Young was convicted of murder, and brings error.

*Affirmed.*

R. R. SMITH and W. L. TAYLOR, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., and L. C. ANDERSON, for the State.

DENT, JUDGE:

Lewis Young at the April term, 1900, of the circuit court of McDowell County, was sentenced to be hanged on the 30th day of August, 1900, for the murder of Anthony Kell, of which he stood convicted. He obtained a writ of error to this Court, and now here insists that the judgment be reversed, the verdict of the jury be set aside, and he granted a new trial; First, because of the admission of improper testimony, and, Second, because the verdict is contrary to the law and evidence, and without evidence to support it.

He objects to the evidence of Lum Whitlock relating to a difficulty had with said Whitlock shortly before the fatal shooting. This whole matter, except some minor details, was already before the jury by the testimony of other witnesses, and it was proper as bearing on the *animus* of the prisoner at the time of the shooting. He also objects to the testimony of C. E. Harman with regard to the bullet that produced the fatal wound for the reason that the bullet was not introduced in evidence. The bullet was produced before the court and jury and while not formally put in evidence, yet it was treated as if in evidence. Hence the objection is without substantial foundation.

The main reliance is on the insufficiency of the evidence to support the verdict.

The prisoner testified that the gun in his hands was accidentally discharged without any intention on his part to shoot or hurt any one. There is much evidence to the contrary, and the jury found against him on this question. It may, therefore, be considered out of the case. The material facts in the case are as follows: The prisoner had a difficulty with one Lum Whitlock about a girl, and followed him into a barber-shop threatening to kill him. He had a pistol and some other person got hold of him and took it from him. He pulled out another pistol and Whitlock hit him over the head with a beer bottle. Whitlock was then pushed out of the barber shop, and Young, full of profanity and anger fired the pistol off but hit no one. He then went to his home and obtained a Winchester rifle. He came up

the street where there was a considerable crowd gathered and said, "I am going to kill some God damn son of a bitch." Some of the bystanders tried to persuade him to give up the gun, that Whitlock was gone. He said that he would not do it, that "the damn niggers had beat him up and he would not stand it, before he would stand it he would rather be dead and in hell," that "they had beat him up and treated him wrong, and he would kill some son of a bitch that night." He then told the crowd to stand back and fired, hitting and killing Anthony Kell, a bystander. It was shown that there was no ill-feeling between the prisoner and Kell, but that they were good friends.

It is insisted that the verdict of murder in the first degree is not sustained by the evidence, for the reason that it fails to show malice or an intention to kill, and the shooting was done while the prisoner was in a fit of anger from having been mistreated by Whitlock and others. That he had had no time to cool off and the shooting was done in hot blood under great provocation.

The evidence shows that the prisoner was the aggressor in the first instance and brought the trouble all on himself against the persuasion and interference of his friends. He had opportunity to cool off when he went for his Winchester. On returning, without provocation and with perfect indifference as to the result, and while his friends were trying to persuade him to do otherwise, with vile words on his lips he fired his gun off into the crowded street and killed an entirely innocent person lawfully in the street. In the case of the *State* v. *Douglass,* 28 W. Va. 300, JUDGE JOHNSON says, "If a father with such a depraved heart should shoot into a crowd of persons and kill his own son, he would be guilty of murder, although he might love his son dearly and there was no unfriendly feeling between them." Malice need not be directed against the deceased, but it is that malevolence which comes from a depraved heart "regardless of social duty and fatally bent on mischief." The whole conduct of the prisoner on this occasion shows that he had a wicked, depraved and malignant heart, and regardless of the law and his duty to his fellow man, he was determined to vent his diabolism on a hapless victim that might come in his way. He recklessly fired his gun in the crowd, not caring who might suffer from it. A more wicked and malicious act could hardly be conceived. The fact that an innocent man was the victim of his unlawful

conduct makes his act the more reprehensible, for it is entirely beyond the bounds of paliation or excuse. Maliciously to fire into a crowd regardless of consequences is murder if death results therefrom. Wharton on Homicide (2d Ed.), s. 52; *Galliher* v. *Com.,* 2 Duvall 163; *State* v. *Smith,* 2 Strobhart 77.

It is insisted on argument that while it is murder, it does not come under the definition of murder in the first degree under section 1, chapter 144, Code, which is as follows: "Murder by poison, lying in wait, imprisonment, starving, or any wilful, deliberate and premeditated killing, or in the commission of or attempt to commit arson, rape, robbery or burglary is murder in the first degree." According to the finding of the jury in this case the killing was wilful, deliberate and premeditated. The prisoner unprovoked, against the earnest protestation of friends, with the deliberate avowal to kill some one, fired his gun regardless of consequences in the crowd with deadly effect. The prisoner's whole conduct from beginning to end of the difficulty exhibits not one redeeming feature, but shows that he was a depraved, wicked creature, with no regard for law or his fellow men—a willing victim of a lawless disposition. While his depravity may excite Christian sympathies, the law furnishes him no excuse therefor, but condemns him to death for that very depravity. Life for life is its demand, not alone that it may be vindicated and the criminal punished, but for the protection of society and a warning to others suffering from a like depravity.

The fact that the order of suspension entered at the instance of the prisoner after judgment and sentence does not show that the prisoner was present at the time such order was entered could in any event only affect such order, and could not possibly vitiate the prior trial, judgment and sentence.

An impartial jury after a careful investigation of the facts and a patient hearing of all the prisoner could present in his defense found no circumstances of mitigation in his favor but adjudged him guilty of a degree of crime punishable by death. The presiding judge confirmed this finding and sentenced him accordingly. The circuit court on examination could find no error in the judgment. The record discloses none to this Court. The law must therefore be permitted to take its course.

The judgment is affirmed.

*Affirmed.*