# CHARLESTON.

## STATE V. VINEYARD.

Submitted October 9, 1917.    Decided October 16, 1917.

1. INDICTMENT AND INFORMATION—*Negativing Presumption of Infant's Incapacity.*

    In an indictment for murder against an infant under fourteen years of age it is not necessary to negative the presumption of incapacity of the defendant to commit the crime charged against him.   (p. 101).

2. CRIMINAL LAW—*Presumption of Incapacity—Instruction.*

    An instruction to the jury in such a case simply indicating the degrees of crime which may be found under an indictment for murder, if the evidence beyond a reasonable doubt should warrant it, is not objectionable on the ground that it ignores the presumption of the incapacity of the defendant.   (p. 102).

3. INFANTS—*Capacity to Commit Crime—Presumption and Burden of Proof—Degree.*

    But an instruction in such case telling the jury that when the homicide is proved it is presumptively murder in the second degree, and if the state would elevate it to first degree murder the burden is upon it, and if the defendant would reduce the degree of the offense the burden is on him, constitutes reversible error.   The law casts no such burden on an infant under the age of fourteen years who is presumptively *doli incapax*.   (p. 102).

4. SAME—*Crimes—Instructions—Malice.*

    And an instruction in such a case, without more, which tells the jury that it is not necessary that malice should exist in the heart of the accused against the deceased, and that malice and the other ingredients of murder may be inferred from the fact of the cutting or killing of the deceased with a deadly weapon, is erroneous, when applied to an infant under the age of fourteen years, prima facie incapacitated to commit the offense.   (p. 103).

5. SAME—*Capacity to Commit Crime.*

    And it is error for the court in such a case to tell the jury that if the defendant at the time of the homicide "had sufficient understanding as to know that the commission of that offense was wrong," the same law was applicable to him as to persons over the age of fourteen years.   To convict an infant in such case it is necessary to show also that he knew or understood the nature and consequences of his act and showed design and malice in its execution.   (p. 104).

Error to Circuit Court, Roane County.

Cully Vineyard was convicted of involuntary manslaugh-
ter, and he brings error.

. *Judgment reversed, verdict set aside, and new trial
awarded.*

*Harper & Baker,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,*
Assistant Attorney General, for the State.

MILLER, JUDGE:

Upon an indictment for the murder of Coy Gandee, a boy
between twelve and thirteen years of age, the defendant,
Cully Vineyard, a boy eleven years one month and seven days
old, was convicted by the jury of involuntary manslaughter,
and thereon the judgment of the circuit court now complained
of was that defendant be ''committed to the West Virginia·
Industrial School for boys, of this state, there to be received
and treated and retained in all respects as other youths
therein, and therein to remain until he shall have arrived
at the age of twenty one years, unless sooner discharged by
the State Board of Control.''

The evidence in the case, besides disclosing the ages of the
two boys, shows that they were sons of near neighbors in the
country, both families being on friendly and intimate terms,
and that the boys played together, at home and at school;
and that prior to the day of the homicide, there was little,
if any, evidence of any ill feeling existing between these chil-
dren, and none except such as would naturally occur between
children of their ages at play. There is some evidence that
a day or two before the homicide defendant with other boys
threw hickory nuts or other small objects at a pet crow owned
by deceased, but that defendant at once ceased doing so
when deceased objected, and no ill feeling between the boys
appears to have been engendered thereby.

The only proof showing or tending to show deliberation or
intent on the part of defendant to assault or injure deceased
was that on the night before the homicide one witness, an
employee of defendant's father, swore that defendant asked

him for his knife, and when asked what he wanted with it, said he was going to cut Coy Gandee's guts out, and that he would show witness blood on it, and also asked him for a razor. Two witnesses for defense, including defendant's father, swore, however, that this witness had previously told them that all the defendant asked for was his knife, and that he made no mention of a razor, and this contradicted him on this point. On cross examination, moreover, he admitted that defendant exhibited no ill feeling, and that as a matter of fact he appeared to be and he thought the boy was joking, and that he did not lend him his knife.

And on the next day, the day of the cutting, two of defendant's schoolmates occupying seats near him swear that defendant requested one of them the loan of his knife, saying he was going to split or cut the bib of Gandee's overalls to scare him, and one of these boys says he heard defendant call Gandee "sons of bitches", and like names. One of them swears also that he saw defendant with a knife on the morning of the same day, but no one swears that he made any use of the knife except to whittle a stick, until the moment of the cutting, which occurred at the forenoon recess of the school they were attending in the country.

The particular occurrence in which defendant intentionally or by accident stabbed deceased, and from which he died a day or two later is described as follows: On the same or the previous day the Gandee boy was seen to grab the defendant by the collar and jerk him around vigorously; and at the morning recess about ten o'clock defendant went out and was seen going away from the school house some little distance, before the Gandee boy came out; when the latter emerged from the school house, he started in the direction of the defendant and on overtaking him was seen to grab him by the collar and to jerk him nearly down to the ground, and when the defendant was observed striking backwards two or three times. When deceased got up he complained that defendant had cut him and held his abdomen where a small puncture was found and through which the small intestine had begun to protrude, and through which, by the time the doctor arrived, it had become extended some twelve or four-

teen inches. This part was amputated by the surgeon and the end of the intestine spliced and then re-inserted in the abdomen. Peritonitis set in a couple of days afterwards and the boy died.

Numerous grounds are assigned for reversal of the judgment. First, the sufficiency of the indictment is challenged. It is in the form prescribed by the statute and many times approved on error to this court. But it is said that as the defendant is an infant under fourteen years, and presumptively incapacitated to commit the crime of murder, the indictment should have negatived this presumption of incapacity, and is bad for its omission to do so. The general rule is well settled that the indictment need not negative matters of defense, such as matter of excuse and justification which are to be set up by defendant. 12 Standard Ency. of Proc. 350.

But is this presumed incapacity on account of age matter of defense? We think it is, at least, the fact that the accused is within "the dubious age of discretion", as some of the books describe it, is matter of defense, and when this fact is shown the burden is then cast upon the state of showing that notwithstanding his age, the accused was doli capax, and criminally responsible for his crime. This proposition is supported by good authority. *Commonwealth* v. *Scannel,* 11 Cush. (Mass.) 547; *People* v. *Wessel,* 98 Cal. 352. The latter case was a rape case, in which it was held that the averment that defendant wilfully and feloniously committed rape upon the person of a female child under the age of fourteen years implied an averment that he was capable of committing the offense, and that it was unnecessary to aver that he was over the age of fourteen years. We think the indictment is not bad for the omitted defensive matter referred to. See Wharton on Hom., (3rd ed.) p. 12. See, also, the elaborate note to *State* v. *Yeargan,* (N. C.) 36 L. R. A. 196, and particularly paragraphs IIa, 1 and 2. We see no more reason for alleging the capacity of the accused in the case of infancy, than in the case of insanity or of any other disability excusing the crime. Both are defensive in their nature and it would not be required in the case of insanity to aver the sanity of defendant.

1 Michie on Hom., 18.   Moreover, between the ages of seven and fourteen the presumption that an infant is *doli incapax* is *prima facie* only and liable to be overcome by clear and convincing proof.   Wherefore the matter must be regarded as defensive, the burden on showing infancy being shifted at once to the state.   *Angelo* v. *The People,* 96 Ill. 209.

The only other grounds relied on for reversal, relate to the giving and refusal of instructions.   At the instance of the State the court gave four instructions.   We see nothing wrong with the first.   It is complained that it ignores the presumption of incapacity of the defendant to commit the crime.   It simply told the jury what degrees of crime might be found under the indictment, provided the evidence beyond a reasonable doubt warranted it, that is, murder in the first or second degrees, voluntary or involuntary manslaughter, or assault or battery, or not guilty.

The second instruction we think was wrong, not perhaps in the abstract, but as applied to this case.   It was approved in *State* v. *Cain,* 20 W. Va. 709; *State* v. *Douglass,* 28 W. Va. 299, and in *State* v. *Stewart,* 63 W. Va. 597.   It told the jury that when homicide is proved the presumption is that it is murder in the second degree, and if the state would elevate it to first degree murder she must establish the characteristics of that crime, and if the prisoner would reduce it to manslaughter the burden is on him.   As applied to this case, it was misleading.   The presumption, in the case of an infant under fourteen years of age is that he is *doli incapax,* and it is incorrect to say that a homicide committed by him is presumptively murder in the second degree, or that the burden is upon him to reduce it to a lesser degree.   The law is that when he is shown to be under fourteen years of age the whole burden is then cast upon the state to prove his capacity to commit the crime with which he is charged, and there is no presumption against him which the law recognizes.   The instruction if at all proper in cases like this should have been so modified as to fully meet the case of an infant.   *Law* v. *Commonwealth,* 75 Va. 885; 14 R. C. L. 265; 7 Ency. Evidence, 264; *Angelo* v. *The People, supra; Allen* v. *United States,* 150 U. S. 551.

It was argued, however, that as the jury found the prisoner guilty only of involuntary manslaughter he could not have been prejudiced by any error against him in this instruction. But how can we say in this case that he may not have been prejudiced? In *Allen* v. *United States, supra,* the court below in an instruction to the jury made the mistake of fixing the beginning of the period of accountability at eleven instead of fourteen years, and although the evidence showed him to have been slightly over fourteen years the court said he might nevertheless have been prejudiced by the error, and that was one of the grounds on which the judgment below was reversed. It is possible that the jury may have been induced by the error in this case to find a different verdict from what they otherwise would have found against the accused.

State's instruction number three is also complained of, not as an abstract proposition of law, but as applied to this case. It told the jury that to convict one of murder it was not necessary that malice should exist in the heart of the accused against the deceased, and that if they believed from the evidence that the prisoner was guilty of cutting the deceased with a deadly weapon, and killing him, the intent, the malice, and the wilfullness, the deliberation and premeditation might be inferred from the act, though such malice may not have been directed against any particular person, but such only as showed a heart regardless of social duty and fatally bent on mischief. As applied to an infant presumptively incapable of committing a crime, we think this instruction was clearly erroneous, for malice is necessary in such cases to supply age, and that when under age malice cannot lawfully be inferred from the bare fact of cutting with a deadly weapon. The court we think by defendant's instruction number two, correctly told the jury that the evidence of malice which was necessary to supply the lack of age in a child under the age of fourteen years charged with murder must be clear and strong, and beyond all doubt and contradiction. *Law* v. *Commonwealth, supra;* 1 Hale P. C., p. 25; *State* v. *Yeargan, supra.* page 200. True it may not be necessary in such cases to offer direct proof of malice, but as is said in Underhill

on Criminal Evidence, section 20, page 36: "The evidence to rebut the presumption of criminal incapacity in the case of a child between the ages of seven and fourteen years must be strong and clear, and prove his capacity to commit crime beyond all reasonable doubt." And in a note to the same section this writer says: "What evidence will be required depends wholly upon the circumstances of each case, as the education and intelligence of the child, his moral character and training and the nature of the crime, its attendant circumstances and the motives which prompted it." Certainly, therefore, the malice necessary to supply the age cannot be assumed merely from the facts recited in this instruction.

Instruction number five is likewise challenged. It told the jury that if they believed from the evidence that defendant at the time he is charged with the killing of the deceased "had sufficient understanding as to know that the commission of that offense was wrong", then the same law applied to him as to persons over the age of fourteen years. In the case of an infant presumptively *doli incapax*, it is necessary to show more than that the accused knew the commission of the act was wrong; it is necessary to show that he fully knew the nature and consequence of his act, and showed design and malice in its execution. We think, therefore, this instruction was too limited in its scope and was calculated to mislead the jury; and certainly it is possible that the defendant may have been prejudiced thereby. Nor was this defect in this instruction cured by the instruction given on behalf of the defendant.

For the foregoing reasons we are of opinion to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, and remanded for new trial.*