Commonwealth ex rel. Sprowal, Petitioner,
*v.* Hendrick.

Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edwin D. Wolf,* for petitioner.

*James D. Crawford,* Deputy District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth.

OPINION BY MR. JUSTICE ROBERTS, May 8, 1970:

Donald Sprowal and four other youths were arrested on March 21, 1970, and charged with assault with intent to kill and lesser related crimes. Two of the five were over eighteen years of age and, therefore, charged as adults. These two received preliminary hearings and were released on $500 bail. The two other juveniles and Donald were ordered held in custody by a juvenile probation officer pending their intake interview. All three were interviewed on March 23, and identical delinquency petitions were filed against them. The next day the three appeared in juvenile court for

a detention hearing, at which time the judge ordered all three detained, appointed the Voluntary Defender to represent them, and scheduled a certification hearing for April 6.

At the certification hearing only Donald and one of the other juveniles were present, the third having been quarantined at the Youth Study Center. The two were told that the Commonwealth's witnesses were not available and that the case would be continued. Donald's counsel then requested a "probable cause hearing," which request was granted.

At the "probable cause hearing," held two days later, there was testimony introduced which the judge found sufficient to sustain the proceedings. At the conclusion of the hearing, the judge released the other two juveniles into the custody of their parents but ordered Donald held, stating that he did not want to countermand the determination of the judge who had ordered Donald's detention at the March 24 hearing. The following day, April 9, the judge who had ordered Donald detained on March 24 told Donald's counsel that he had no objection to Donald's release. Counsel then appeared before the judge who conducted the probable cause hearing and requested Donald's release. The request was denied, apparently because the judge had reason to believe that some other juveniles, including Donald's released codefendant, had been in the vicinity of the courthouse the day before and had threatened retaliation for the court's failure to release Donald. This reason, however, does not appear of record, but was presented to the Court at oral argument.

An appeal from the refusal to release and a petition for habeas corpus were then filed in the Superior Court, which dismissed the appeal as interlocutory and denied the habeas corpus petition on its merits. On the day of the denial an original petition for habeas corpus was filed in this Court. We have taken jurisdiction in or-

der to clarify the procedures which govern the pre-adjudicatory release of juvenile defendants. *Commonwealth ex rel. Paylor v. Claudy,* 366 Pa. 282, 77 A. 2d 350 (1951). The case is remanded to the Court of Common Pleas, Family Court Division, for a hearing and determination of the reasons for the continued custody of the petitioner.

In the normal course of events, a juvenile who has not yet had an adjudicatory hearing is released into the custody of a responsible party, usually his or her parents.[1] This is no doubt attributable at least in part to the fact that juveniles normally have only limited mobility, and we fully expect that there will be no reduction in the high percentage of juveniles who are currently so released. As with adults, however, certain restrictive or coercive measures may be proper if they are necessary to insure the appearance of the juvenile at subsequent proceedings. Such measures should be utilized, however, only when the hearing court reasonably determines that there is no other less coercive method whereby future attendance can be reasonably assured and places the reasons for this finding on the record.

Unlike an adult, however, a juvenile may be detained by the juvenile court for reasons other than the

---

[1] "Pending the final disposition of any case, the child shall be subject to the order of the court, and may be permitted by the court to remain in the control of his or her parents or the person having him or her in charge, or in charge of a probation officer, or the child may be placed by the court in the custody of any association or society having for one of its objects the care of dependent, delinquent or neglected children, or may be ordered by the court to be kept and maintained in some place provided by the county for such purposes. . . ." Act of June 2, 1933, P. L. 1433, §§6-8, as amended, 11 P.S. §§248-50. This clear legislative policy is in harmony with the protective and rehabilitative objectives of the juvenile court proceedings. See *Terry Appeal,* 438 Pa. 339, 265 A. 2d 350 (1970) ; *Wilson Appeal,* 438 Pa. 425, 264 A. 2d 614 (1970).

necessity of guaranteeing his presence at future proceedings. If a juvenile does not have a home with his parents or other responsible party, or is in need of protective custody, or is in need of psychiatric help or should have psychological testing and evaluation, he or she may be detained for such protective purposes before there is an adjudication of delinquency. The judge who orders such detention must, however, specifically find that the detention is necessary and must have support for the order in the record developed at the preadjudicatory hearing. Additionally, the detention must be tailored to the justification.[2]

In the instant case, the reason for Donald's detention does not appear on the record. Since we cannot be certain Donald's continued detention is proper under the principles set forth above, we herewith vacate the detention order and remand the matter to the juvenile court for further proceedings consistent with this opinion.

---

[2] For example, detention for the purpose of administering tests would be impermissible if there were some other way to insure that the juvenile would be available for the testing.