317 S.E.2d 150

**STATE ex rel. M.C.H. and S.A.H.**

v.

**Jack KINDER, Magistrate, etc., et al.**

**No. 16203.**

Supreme Court of Appeals of
West Virginia.

May 9, 1984.

George Castelle, Juvenile Advocates, Inc., Charleston, for appellants.

Denny Dodson, Kanawha Home for Children, Dunbar, for appellees.

MILLER, Justice:

In this original jurisdiction proceeding, we are asked to set some standards regarding preadjudication detention of juveniles who have committed acts which would be crimes if they were adults. This case involves two juveniles ages seven and nine who were confined in a secure detention facility to await the disposition of delinquency proceedings. Their counsel argues that they should not have been committed to a secure, prison-like facility because of their ages absent some showing of extraordinary circumstances. Further error is assigned that the committing magistrate should not have conditioned their release upon the posting of a $5,000 bond for each child. Because we agree with these contentions, we grant the petitioners' combined petition for writs of prohibition and habeas corpus.

M.C.H. is a seven-year-old boy who is currently enrolled in the second grade of a public school in Kanawha County. His brother and co-petitioner, S.A.H., is a nine-year-old currently enrolled in the fourth grade. Both children live with their mother, a thirty-two-year-old homemaker, who supports her family by means of $206 per month in welfare assistance and food stamps. Mrs. H. is divorced, but is seeking a reconciliation with her former husband.

On January 28, 1984, the petitioners were arrested on a delinquency charge of breaking and entering and taken to the Charleston police station for interrogation. When their mother arrived at the station in response to a telephone call from the police, she was informed that her children were the subject of delinquency petitions filed by the principal of their elementary school. According to these petitions, the boys had been apprehended inside the school with approximately $12 worth of money, toys, and candy in their possession.

After informing Mrs. H. of the charges lodged against her children, the police took the petitioners to the Magistrate Court of Kanawha County, where they appeared before the Honorable Jack Kinder, one of the respondents in this action. The arresting officer and the complaining witness described the circumstances surrounding the arrest of the two boys. Mrs. H. admitted that she had had some difficulty in supervising her children, but expressed her desire to retain custody of them, and her distress at the prospect of separation. Magistrate Kinder ordered both children detained in secure confinement after they were unable to post a $5,000 bond set for each child.

The petitioners were then taken to the Kanawha Home for Children, a facility located in Dunbar, West Virginia. The Kanawha Home for Children is a "secure facility"[1] providing temporary shelter to juvenile offenders charged with all categories of criminal offenses, including crimes of a violent or sexual nature. It houses young people up to twenty years of age. The Kanawha Home for Children has a secure common area for daytime activity. At night, the juveniles are locked in cells with barred windows, bare walls, and steel doors. Each cell is furnished with a steel cot, an open toilet, and nothing else.

The petitioners spent four days in this spartan setting. On the fourth day, counsel was appointed for the petitioners and he was able to procure a modification of the magistrate's order to authorize release of the petitioners to the custody of their mother. At the time of the hearing in this Court, the petitioners were participating in the home detention program of the Kanawha Home for Children. Under this program, children live at home, attend their regular school, and receive supervision on a daily basis by a home detention worker.

### I.

■ Although the respondents do not raise a mootness issue, we acknowledge its existence because at the time of the hearing in this Court, the two juveniles had been released into the custody of their mother. We do not believe, however, that the matter is moot.[2] In *Rissler v. Giardina,* W.Va., 289 S.E.2d 180 (1982), we addressed the issue of mootness in the context of a class action filed by four prisoners held in a county jail. The trial court had dismissed the action when three of the petitioners had been transferred or released from the jail and the fourth withdrew from the suit prior to a disposition on the merits.

We cited a number of United States Supreme Court cases[3] in *Rissler,* which had recognized an exception to the mootness doctrine where a matter was "capable of repetition, yet evading review." Although *Rissler* and the cases it chiefly relied upon dealt with mootness in class actions,[4] the

1. A "secure facility" is one "which is designed and operated so as to ensure that all entrances and exits from such facility are under the exclusive control of the staff of such facility, whether or not the person being detained has freedom of movement within the perimeter of the facility, or which relies on locked rooms and buildings, fences, or physical restraint in order to control behavior of its residents." W.Va.Code, 49–5B–3(7) (1979). *See also* W.Va.Code, 49–5B–3(8) (1979) (defining "nonsecure facility"); *State ex rel. B.S. v. Hill,* 170 W.Va. 323, 294 S.E.2d 126, 128 (1982); *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 181, 233 S.E.2d 318, 325 (1977).

2. In *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1182–83, 71 L.Ed.2d 353, 356 (1982), the United States Supreme Court gave this definition of mootness, quoting from *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491, 502 (1960): "In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"

3. *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

4. *Rissler*'s relevant syllabus point is Syllabus Point 3: "A class action will not be rendered moot, even though the named petitioners' status changes or they lose their stake in the outcome

"capable of repetition, yet evading review" exception is not limited to such actions.[5] We applied *Rissler*'s exception to a single party litigant in note 1 of *State ex rel. White v. Narick,* 170 W.Va. 195, 292 S.E.2d 54, 55 (1982).

In *State v. Gleason,* 404 A.2d 573, 578 (Me.1979), Maine's Supreme Court was confronted with a juvenile case which raised a number of issues with regard to its juvenile statutes. The issue of mootness was raised because the juvenile had been released from detention prior to the case being filed in the supreme court. *Gleason,* like the present case, was not brought as a class action. The court, in rejecting the mootness issue, outlined these considerations in determining mootness:

"First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. *See Bennett v. State,* [289 A.2d 28 (Me. 1972)]; *Sibron v. New York,* 392 U.S. 40, 53–55, 88 S.Ct. 1889 [1897–98] 20 L.Ed.2d 917 (1968). Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. *See King Resources Co. v. Environmental Improvement Com'n.,* Me., 270 A.2d 863, 870 (1970); *East Meadow Community Concerts Ass'n. v. Board of Education,* 18 N.Y.2d 129, 272 N.Y.S.2d 341, 344, 219 N.E.2d 172, 174 (1966). Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided. *See Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 125–126, 94 S.Ct. 1694 [1699–1700] 40 L.Ed.2d 1 (1974); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705 [713], 35 L.Ed.2d 147 (1973); *cf. Good Will Home Assoc. v. Erwin,* [285 A.2d 374] at 380."

■ We conclude, therefore, that a case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

Other courts have held that issues surrounding preadjudication detention of juveniles are not rendered moot because the juvenile is released from detention while the case is pending.[6] *See, e.g., Doe v. State,* 487 P.2d 47 (Alaska 1971); *L.O.W. v. District Court in and for County of Arapahoe,* 623 P.2d 1253 (Colo.1981) (in bank); *Pauley v. Gross,* 1 Kan.App.2d 736, 574 P.2d 234 (1977); *People ex rel. Wayburn v. Schupf,* 39 N.Y.2d 682, 350 N.E.2d 906, 385 N.Y.S.2d 518 (1976).

Under the foregoing law, we find that the juveniles' release from detention does not render this case moot.

## II.

■ Another issue which is not the subject of disagreement by the parties is the petitioners' right to counsel at a detention hearing. There can be no question that

of the litigation, if the issue is capable of repetition and yet will evade review because of the petitioners' change in status."

5. *See, e.g., United States v. Steelhammer,* 539 F.2d 373, 376 (4th Cir.1976); *Doe v. State,* 487 P.2d 47, 53 (Alaska 1971); *In Re H.,* 19 Cal. App.3d 350, 352, 96 Cal.Rptr. 791, 792 (1971); *In Re William M.,* 3 Cal.3d 16, 23–25, 473 P.2d 737, 741–43, 89 Cal.Rptr. 33, 37–39 (1970) (in bank); *Morris v. D'Amario,* 416 A.2d 137, 139 (R.I. 1980).

6. The improper detention of juveniles is obviously a situation capable of repetition, given the hundreds of youngsters placed on an interim basis in secure facilities each year. In 1981 alone, 1,864 juveniles were placed in secure

detention facilities or jails to await the disposition of their cases. Juvenile Justice Committee, *Survey of Juvenile Incarcerations in West Virginia's County Jails: January 1—Dec. 31, 1981* 6 (undated). Given the short periods of time that most juveniles spend in secure detention, the situation is also capable of evading review unless courts accept cases which are technically moot. At the Kanawha Home for Children in 1980, the average length of stay was 6.9 days. Juvenile Justice Committee, *Interim Report on the Kanawha Home for Children: Process of Admission* 3 (1982). Ninety-seven percent of the juveniles were held for thirty days or less. *Id.*

W.Va.Code, 49–5–1(c) (1982),[7] provides such right:

"The child shall have the right to be effectively represented by counsel at all stages of proceedings under the provisions of this article. If the child, parent or custodian executes an affidavit showing that he cannot pay for an attorney appointed by the court or referee, the court shall appoint counsel, to be paid as provided for in article twenty-one [§ 29–21–1 et seq.], chapter twenty-nine of this Code."

A detention hearing is "one of the stages of proceeding" as it is mandated by W.Va. Code, 49–5–8(d) (1982).

In *State ex rel. Kearns v. Fox*, 165 W.Va. 421, 268 S.E.2d 65, 66–67 (1980), we quoted W.Va.Code, 49–5–1(c), and said: "In any proceeding under the article, after a formal petition has been filed, the juvenile is entitled to counsel and, if he cannot afford to pay, counsel must be appointed for him."

We also recognized in *Kearns* that W.Va.Code, 49–5–2(c) (1978), permitted "a child to be brought before the court on a warrant issued by a magistrate." 165 W.Va. at 423, 268 S.E.2d at 66. However,

*Kearns* did not point out that this was only one of several ways in which juvenile proceedings may be initiated. This is made clear from a reading of W.Va.Code, 49–5–2.[8]

Moreover, *Kearns* did not address the question of what occurs after a child is brought into court on a warrant which is covered by the detention statute. W.Va. Code, 49–5–8(d).[9] This subsection requires a detention hearing and the right to counsel. Thus, it is clear under W.Va.Code, 49–5–1(c), when read *in pari materia* with W.Va.Code, 49–5–2, and W.Va.Code, 49–5–8(d), that a child who is taken into custody under a warrant must be given a detention hearing and must be given the right to have counsel at that hearing.

We are aware that in *Arbogast v. R.B.C.*, 171 W.Va. 737, 301 S.E.2d 827, 829 (1983) (per curiam), it was indicated that a juvenile had no right to counsel at a detention hearing held after he had been taken into custody on a warrant where no juvenile petition had been filed.[10] This case relied on Syllabus Point 1 of *Kearns* which stated that W.Va.Code, 49–5–7 (1982), relating to the filing of a juvenile petition, was the beginning of formal proceedings at which the right to counsel attached.[11]

"A child in custody must immediately be taken before a referee or judge of the circuit court and in no event shall a delay exceed the next succeeding judicial day: Provided, that if there be no judge or referee then available in the county, then such child shall be taken immediately before any magistrate in the county for the sole purpose of holding a detention hearing. The judge, referee or magistrate shall inform the child of his right to remain silent, that any statement may be used against him and of his right to counsel, and no interrogation shall be made without the presence of a parent or counsel. If the child or his parent, guardian or custodian has not retained counsel, counsel shall be appointed as soon as practicable."

---

7. For citation purposes, we have utilized the year that the last amendment was made to the particular juvenile statute. For convenience, we have cited the year of the statute the first time it is used and not thereafter. None of the amendments since 1978 have changed to any substantial degree the substantive content of the particular statutes cited herein. W.Va.Code, 49–5B–1, *et seq.*, was not enacted until 1979.

8. The relevant portion of W.Va.Code, 49–5–2, is: "A child may be brought before the circuit court for proceedings under this article by the following means and no others:
"(a) By juvenile petition praying that the child be adjudged neglected or delinquent;
"(b) Certification or transfer to the juvenile jurisdiction of the circuit court, from the criminal jurisdiction of such court, from any foreign court or any court of this State before which such child is brought charged with the commission of a crime, as provided in section one, one-a or one-b [§ 49–5–1, 49–5–1a or 49–5–1b] of this article;
"(c) By warrant, capias or attachment issued by a judge, referee or magistrate returnable to the circuit court, charging a child with an act of delinquency."

9. The applicable portion of W.Va.Code, 49–5–8(d), states:

10. *Arbogast* has been criticized and the comment made "that this case will be overruled whenever the Supreme Court of Appeals has an opportunity to confront the issue again." *Survey of Developments of West Virginia Law: 1983*, 86 W.Va.L.Rev. 479, 618 (1984).

11. Syllabus Point 1 of *Kearns* states:
"The filing of a petition under *W.Va.Code*, 49–5–7 [1978] begins the formal proceedings contemplated by Chapter 49 of the *Code.*

What both *Arbogast* and *Kearns* failed to mention is that a juvenile proceeding can be initiated under W.Va.Code, 49–5–2, other than by a petition under W.Va.Code, 49–5–7. As we have previously pointed out, where a proceeding is initiated by an arrest warrant under W.Va.Code, 49–5–2(c), the detention hearing comes into play. This proceeding requires the presence of counsel under W.Va.Code, 49–5–8(d), as well as the broad mandate of the right to counsel contained in W.Va.Code, 49–5–1(c), i.e., "the child shall have the right to ... counsel at all stages of proceedings under ... this article."

To the extent that *Kearns* and *Arbogast* suggest that the right to counsel is not available for a juvenile at a detention hearing, they are disapproved.

### III.

Preadjudication detention is governed primarily by W.Va.Code, 49–5–8(d),[12] and W.Va.Code, 49–5A–2 (1977).[13] These provisions must be construed in light of W.Va. Code, 49–1–1(a) (1981),[14] which defines the underlying purposes of our juvenile code and expresses a clear preference for allowing parents to retain custody of their children. Furthermore, we also think it is evident that under W.Va.Code, 49–5A–2, the legislature intended at a detention hearing to establish a preference for release over custody: "Unless the circumstances of the case otherwise require ... [a] child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency."

Thus, we believe that W.Va.Code, 49–5–8(d), and W.Va.Code, 49–5A–2, when read in light of the provisions of W.Va.Code, 49–1–1(a), demonstrate that the legislature has established a substantial preference for release rather than custody at a detention hearing. Other courts have arrived at much the same conclusion after an analysis

the juvenile against whom the petition has been filed has an absolute right to counsel and, if he cannot afford to retain counsel, the court has a duty to appoint counsel for him."

**12.** In pertinent part, W.Va.Code, 49–5–8(d), provides:

"The referee, judge or magistrate shall hear testimony concerning the circumstances for taking the child into custody and the possible need for detention in accordance with section two [§ 49–5A–2], article five-A of this chapter. The sole mandatory issue at the detention hearing shall be whether the child shall be detained pending further court proceedings. *The court shall, if advisable, and if the health, safety and welfare of the child will not be endangered thereby, release the child on recognizance to his parents, custodians or an appropriate agency; however, if warranted, the court may require bail, except that bail may be denied in any case where bail could be denied if the accused were an adult."* (Emphasis added)

**13.** W.Va.Code, 49–5A–2, provides:

"A child who has been arrested or who under color of law is taken into the custody of any officer or employee of the State or any political subdivision thereof shall be forthwith afforded a hearing to ascertain if such child shall be further detained. In connection with any such hearing, the provisions of article five [§ 49–5–1 et seq.] of this chapter shall apply. *It shall be the duty of the judge or referee to avoid incarceration of such child in any jail.*

*Unless the circumstances of the case otherwise require, taking into account the welfare of the child as well as the interest of society, such child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency."* (Emphasis added)

**14.** W.Va.Code, 49–1–1(a), provides:

"The purpose of this chapter is to provide a comprehensive system of child welfare throughout the State which will assure to each child such care and guidance, *preferably in his or her home,* and will serve the spiritual, emotional, mental and physical welfare of the child; *preserve and strengthen the child's family ties whenever possible with recognition of the fundamental rights of parenthood and with recognition of the State's responsibility to assist the family in providing necessary education and training* and to reduce the rate of juvenile delinquency and to provide a system for the rehabilitation or detention of juvenile delinquents and the protection of the welfare of the general public. In pursuit of these goals *it is the intention of the legislature to provide for removing the child from the custody of parents only when the child's welfare or the safety and protection of the public cannot be adequately safeguarded without removal;* and, when the child has to be removed from his or her family, to secure for the child custody, care and discipline consistent with the child's best interests and other goals herein set out." (Emphasis added)

of their juvenile statutes.[15] For example, the Colorado Supreme Court in *L.O.W. v. District Court,* 623 P.2d at 1259, made this statement concerning the presumption in favor of release:

"However, a trial court may detain a juvenile without bail only after giving due weight to a presumption that a juvenile should be released pending a dispositional hearing except in narrowly defined circumstances where the state establishes that detention is necessary to protect the child from imminent harm or to protect others in the community from serious bodily harm which the child is likely to inflict." (Footnotes omitted)

In *Doe v. State,* 487 P.2d at 52–53, the court set out this general rule regarding the release of juveniles:

"We hold that a child has the right to remain free pending an adjudication that the child is delinquent, dependent, or in need of supervision, where the facts supporting the petition involve an act which, if committed by an adult, would be a crime, and where the court has been given reasonable assurance that the child will appear at future court proceedings. If the facts produced at the inquiry show that the child cannot return or remain at home, every effort must be made to place the child in a situation where his freedom will not be curtailed. Only if there is clearly no alternative available may the child be committed to a detention facility and deprived of his freedom."

*See also Fulwood v. Stone,* 394 F.2d 939, 944 n. 15 (D.C.Cir.1967); *Commonwealth*

*ex rel. Sprowal v. Hendrick,* 438 Pa. 435, 438–39, 265 A.2d 348, 349 (1970).

We believe the general standard for determining whether secure detention is needed, found in W.Va.Code, 49–5A–2, i.e., "taking into account the welfare of the child as well as the interest of society," is susceptible to further refinement. The determination of whether to release or detain a juvenile bears some analogy to the determination of whether to release an adult on bail, particularly in view of the fact that the statutory standards in both cases are rather general.

We have consistently stated with regard to adult bail that the general standards found in W.Va.Code, 62–1C–3,[16] are not the only relevant criteria. *See State v. Steele,* 173 W.Va. 248, 314 S.E.2d 412 (1984); *State ex rel. Bennett v. Whyte,* 163 W.Va. 522, 258 S.E.2d 123 (1979); *State ex rel. Ghiz v. Johnson,* 155 W.Va. 186, 183 S.E.2d 703 (1971). In *Ghiz,* we listed a number of factors that should be considered in addition to the statutory criteria. We included the probability that the accused, if released, might commit another crime, and went on to say that:

"Consideration should be given to the conduct of the accused; does he have a prior record of arrest or conviction; has he previously failed to appear when released on bond; did accused surrender to police or did he flee or attempt to flee. Consideration should also be given as to whether the accused has been indicted or has merely been arrested but not indicted." 155 W.Va. at 190, 183 S.E.2d at 705.

---

**15.** This widely stated preference for release reflects the fact that secure detention imposes serious costs on society and juveniles alike. According to one source:

"Congressional testimony, various studies, and the media have discussed the negative aspects of secure juvenile detention on both the juvenile and public. Studies have concluded that the practice of detaining children should be severely limited for the following reasons:

—A detention center's environment may serve to promote rather than discourage future delinquency behavior.

—Secure detention is costly to the taxpayer.

—Detention may hamper the juvenile's opportunity to prepare an effective defense.

—Detention may subtly influence the court's final disposition of the case to the juvenile's detriment."

United States General Accounting Office, *Report to the Attorney General and the Secretary of the Interior: Improved Efforts Needed to Change Juvenile Detention Practices* 2 (1983).

**16.** The relevant portion of W.Va.Code, 62–1C–3, is: "The amount of bail shall be fixed by the court or justice with consideration given to the seriousness of the offense charged, the previous criminal record of the defendant, his financial ability, and the probability of his appearance."

We also quoted this statement from 8 C.J.S. *Bail* § 36(1) (1962):

"In determining these questions in any particular case, it is proper to consider the nature of the crime charged and its punishment, the strength of the evidence against accused, and his character, means, and standing, as well as his age, and the appearance of the parties.

"The fact that accused subsequently refused an opportunity to escape, or has voluntarily surrendered himself, has sometimes influenced the granting of bail." 155 W.Va. at 191, 183 S.E.2d at 706.

■ Transposing these criteria to the juvenile context, we believe that the relevant factors to be considered for preadjudication detention of juveniles, in addition to the statutory provisions found in W.Va.Code, 49–5A–2, i.e., "taking into account the welfare of the child as well as the interest of society," are: (1) the seriousness of the offense charged; (2) the likelihood of flight or conversely stated the probability of his appearance; (3) his prior juvenile record and regularity of appearances; (4) whether under all of the circumstances, he poses a substantial danger to himself or to the community; (5) his age, maturity, and general health; (6) his family background and the family's willingness to supervise his behavior; and (7) the availability of alternative sources of placement, short of a secure detention facility, if the family is unavailable, unfit, or unwilling to exercise control over the child.[17]

■ We also believe, as a matter of common sense, that young children should not be placed in secure detention except in the most extraordinary cases. In determining the minimum age for secure confinement, an appropriate analogy can be made to the provisions of W.Va.Code, 28–1–2(a) (1980), and W.Va.Code, 28–3–2 (1980), which prevent the post-conviction incarceration of juvenile delinquents under the age of ten for males and under the age of twelve for females [18] in facilities operated by the commissioner of corrections.[19]

### IV.

Although not discussed by the parties, we are aware of W.Va.Code, 49–5–1(b) (1982), which provides that a child has the

17. We believe that W.Va.Code, 49–5–8(d), and W.Va.Code, 49–5A–2, when read with W.Va. Code, 49–1–1, clearly indicate that before a judge, referee, or magistrate orders a child placed in secure detention, he must consider placement with the following alternatives, in the order given: (1) parents, (2) relatives, (3) custodian, or (4) other responsible adult or (5) agency.

18. The relevant portions of these statutes are: W.Va.Code, 28–1–2(a): "Any male youth between the ages of ten and eighteen years may be committed to the custody of the commissioner of corrections by a circuit court of this State in the manner prescribed in article five [§ 49–5–1 et seq.], chapter forty-nine of this Code."
W.Va.Code, 28–3–2: "Any female youth between the ages of twelve and eighteen years may be committed to the custody of the commissioner of corrections by a circuit court of this State in the manner described in article five [§ 49–5–1 et seq.], chapter forty-nine of this Code."

19. A number of states have adopted statutes setting minimum, as well as maximum, ages for juveniles subject to delinquency proceedings. *See* Colo.Rev.Stat. § 19–1–103(9)(a) (1973) (ten years); Mass.Gen.Laws Ann. ch. 119, § 52 (1969) (seven years); Miss.Code Ann. § 43–21–105(i) (1972) (ten years); N.Y.Soc. Serv.Law § 371(5) (McKinney's 1983) (seven years); Tex.Fam.Code Ann. § 51–02(1)(A) (Vernon 1975) (ten years); Vt.Stat.Ann. tit. 33, § 632(a)(1) (1981) (ten years). These minimum ages are apparently based upon a recognition that historically at common law criminal culpability did not attach to children age seven and under and that between ages seven and fourteen there was a presumption against criminal culpability. *State v. Vineyard*, 81 W.Va. 98, 93 S.E. 1034 (1917); W. LaFave & A. Scott, Handbook on Criminal Law 351 (1972).

The Institute of Judicial Administration—American Bar Association Joint Commission on Juvenile Justice Standards has recommended ten years as the minimum age of responsibility. *See Standards Relating to Juvenile Delinquency and Sanctions* § 2.1(A) at 14 (IJA–ABA Joint Commission on Juvenile Justice Standards 1980). According to the Commission: "Since a finding of juvenile delinquency liability necessarily implies some measure of culpability with respect to the juvenile's offending behavior, common sense requires the specification of some age below which such liability cannot extend." *Id.,* commentary at 16.

same right to bail as an adult.[20] This section must be read in light of the general policy of our juvenile law favoring nondetention. Obviously, this policy can be easily frustrated if in a routine juvenile case, such as presented here, a substantial secured bail bond is required with the condition if bail is not posted, then secure detention will follow. The detention hearing procedure set out in W.Va.Code, 49–5A–2, does not require release to be conditioned on the giving of bail: "[S]uch child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency."[21]

It is true that W.Va.Code, 49–5–8(d), which also refers to the detention hearing speaks of the release of a child "on recognizance to his parents, custodians or an appropriate agency." This we deem to mean the personal recognizance of the child because the next clause gives the court discretion to require bail.[22]

■ We believe that where the underlying offense is serious and the committing official believes that less drastic alternatives to secure detention are not available, bail may be appropriate. It may also have a use in less serious cases where there is a legitimate question whether a child will appear if released in the custody of his parents, and this concern can be alleviated by requiring a reasonable bail.[23] This conclusion is consistent with that of the Colorado Supreme Court in *L.O.W. v. District Court* where an express right to bail was contained in the juvenile statutes. The court concluded that the juvenile code's policy against detention significantly diminished the necessity for using bail: "If the policy ... disapproving the use of detention ... is implemented, the need for bail will be minimized in juvenile proceedings." 623 P.2d at 1258.

■ In the present case, in view of the childrens' ages, their lack of any prior offenses, the nature of the acts charged, and the willingness of their mother to assume control, there was no need to require bail.

## V.

Committing officials have a duty to explain in writing their reasons for detaining a child, their choice of placement, and if they require secured bail, their reasons for doing so. This duty is required by W.Va. Code, 49–5A–3 (1978), which states in part that: "After a detention hearing conducted by a judge, magistrate or referee an order shall be forthwith entered setting forth the findings of fact and conclusions of law with respect to further detention pending hearing and disposition of the child proceedings involving such juvenile." The written findings of fact and conclusions of law mandated by W.Va.Code, 49–5A–3, are necessary if there is to be any meaningful review of detention decisions.[24] This comports with the standard of reviewability in an adult bail hearing. *See State v. Gary*, 162 W.Va. 136, 247 S.E.2d 420 (1978).

## VI.

■ Given the statutory scheme outlined above, we conclude that the petitioners were unlawfully detained. The petitioners were both under ten years of age, and that

---

**20.** W.Va.Code, 49–5–1(b), provides: "Any child shall be entitled to be admitted to bail or recognizance in the same manner as a person over the age of eighteen years and shall have the protection guaranteed by article three of the Constitution of West Virginia."

**21.** The complete text of W.Va.Code, 49–5A–2, is set out in note 13, *supra.*

**22.** This portion of W.Va.Code, 49–5–8(d), states: "[H]owever, if warranted, the court may require bail, except that bail may be denied in any case where bail could be denied if the accused were an adult." *See* note 12, *supra,* for a more complete text of W.Va.Code, 49–5–8(d).

**23.** In most states where the juvenile statutes do not expressly provide for the right to bail, courts have refused to recognize such a right in juvenile cases, reasoning in part that the juvenile code preference for nondetention during the preadjudication proceeding provides sufficient safeguards. *See, e.g., Doe v. Alaska*, 487 P.2d 47 (Alaska 1971); *Pauley v. Gross*, 1 Kan.App.2d 763, 574 P.2d 234 (1977); *Baker v. Smith*, 477 S.W.2d 149 (Ky.1972); Annot., 53 A.L.R.3d 848 (1973).

**24.** W.Va.Code, 49–5A–4, authorizes the circuit court to review any detention order entered by a magistrate or juvenile referee.

in itself made secure detention inappropriate absent some extraordinary circumstances. Such circumstances were not present in this case. Indeed, the record fails to reveal any facts that would justify detaining even much older children. We have previously noted that the imposition of a $5,000 bail bond on each of the juveniles was unwarranted.

Finally, we observe that there was an absence of sufficient findings in the magistrate's commitment orders to justify the bail decision which led to the juveniles' secure detention when bail could not be posted.[25] Each order contained only general, conclusory language: "[T]he health, safety and welfare of this child will not be endangered upon release of the child on recognizance to his/her parents, custodians or an appropriate agency, however, the interest of society requires that bail be set, therefore, bail is hereby ORDERED set in the amount of $5000.00."

For these reasons, the petitioners' combined writ of prohibition and habeas corpus is hereby granted.

Writ Granted.

---

**25.** In Part IV, *supra*, we have pointed out that bail should be sparingly used in the juvenile detention context. Here, the committing officer appears to have considered only the bail question, fixed an amount, and when it was not met, proceeded to have the juveniles placed in a secure detention facility. The correct approach is to determine if release to the parents, family, or other responsible adult or agency is feasible. It is only when these options are deemed not suitable based upon the factors outlined in Part III that commitment to a secure detention facility should be considered. It is at this point that the bail question should come into play.