420 S.E.2d 532

FACILITIES REVIEW PANEL; Jay Montgomery Brown, Franklin D. Cleckley, Daniel F. Hedges, Bradley Pyles, and Gregory Wagner, Members; and Taunja Willis Miller, Commissioner, West Virginia Department of Human Services Petitioners,

v.

Juanita COE, Circuit Clerk of Wood County; Honorable Arthur N. Gustke, Judge of the Circuit Court of Wood County, Respondents.

No. 19123.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 5, 1991.

Rehearing Granted July 25, 1991.

Filed as Modified Oct. 17, 1991.

Withdrawn Nov. 27, 1991.

Filed as Modified June 11, 1992.

Mary M. Downey, Charleston, for Facilities Review Panel.

George M. Scott, Spencer, and Robert W. Full, Goodwin & Goodwin, Charleston, for respondent, Judge Gustke.

John Shank, Sr. Asst. Atty. Gen., Charleston, for Dept. of Human Services.

Mary Beth Kershner, Asst. Pros. Atty., Charleston, for State of W. Va.

BROTHERTON, Justice:

This case is before the Court on the response of the Special Master to our November 17, 1989, order, in which we authorized the Honorable Larry Starcher, as Special Master, to investigate the need for standardized juvenile detention guidelines, to review the detention centers and relevant statistics statewide, and to determine the need to rotate the assignment of juvenile cases among the circuit judges in each circuit.[1]

This case was initiated by a petition for a writ of mandamus brought in 1989 by the Facilities Review Panel and Taunja Willis Miller, Commissioner of the West Virginia Department of Human Services, which dealt with the detention of juveniles prior to adjudicatory hearings in Wood County, West Virginia.[2]

---

1. This opinion is filed pursuant to a petition for rehearing granted on July 25, 1991. The opinion was withdrawn on November 27, 1991, for further briefing. The original opinion has been modified to include Appendices A, A.1, A.2, A.3, A.4, and A.5.

2. The petitioners asked that this Court do the following:
(1) Adopt the juvenile justice standards developed by the American Bar Association and the Institute for Judicial Administration; (2) require the respondent, Circuit Clerk Juanita Coe, to rotate juvenile cases randomly among the three circuit judges presiding in Wood County; (3) require the respondent, Circuit Judge Arthur Gustke, to cooperate with the West Virginia Department of Human Services in establishing guidelines for an in-home detention program; (4) require the respondent, Judge Gustke, to arrange for utilization of the electronic monitor-

On November 17, 1989, we issued an order appointing Larry Starcher, Judge of the Seventeenth Judicial Circuit, to act as Special Master to determine whether standardized juvenile detention guidelines were needed and to review the situation at the West Central Regional Juvenile Detention Center (WCRJDC) and other detention facilities "to determine the danger overcrowding poses to children and the resulting effect the overcrowding has on the services normally offered." In addition, Judge Starcher was to investigate the need for cases to be rotated, regardless of type, among the circuit judges of Wood County.

Judge Starcher's report was received by this Court on September 4, 1990. We compliment Judge Starcher and his assistants on an excellent and thorough report.[3] Also filed is the report of private investigator, Warren Stedman, who investigated the WCRJDC at the request of the respondent, Judge Gustke. Judge Starcher's report makes it clear that juvenile detention standards exist in this State. The issue now before us, however, is whether those standards are sufficient or if the American Bar Association Juvenile Justice Standards should be adopted.

At the outset of his report, Judge Starcher emphasizes the legislative intent to prohibit detaining minor children in secure custody except in very specific circumstances.[4] West Virginia Code § 49–5A–2 (1986) states that:

> It shall be the duty of the judge or referee to avoid incarceration of such child in any jail. Unless the circumstances of the case otherwise require, taking into account the welfare of the child as well as the interest of society, such child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency.

Similarly, W.Va.Code § 49–5–8(d) provides that:

> The sole mandatory issue at the detention hearing shall be whether the child shall be detained pending further court proceedings. The court shall, if advisable, and if the health, safety and welfare of the child will not be endangered thereby, release the child on recognizance to his parents, custodians or an appropriate agency; however, if warranted, the court may require bail. . . .

■ This Court provided further guidance on the issue of juvenile detention in *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984). "Young children should not be placed in secure detention except in the most extraordinary cases." *Id.* at syl. pt. 5. In *Kinder*, the

---

ing systems for juveniles and provide information about the monitoring system to the Department of Human Services and the Director of the West Central Regional Juvenile Detention Center (WCRJDC) in Wood County; and (5) require that the respondent, Judge Gustke, refrain from committing additional children to the WCRJDC when the maximum capacity of ten children had been reached.

**3.** We acknowledge the contributions of Marcia Pops and James Kane, the two probation officers who worked with Judge Starcher in completing his investigation and report.

**4.** West Virginia Code § 49–5–8 (1986) relates the circumstances under which a juvenile may be taken into custody. It also provides that, once a child is taken into custody, the child must be taken immediately before a referee or circuit court judge for the purpose of holding a detention hearing based upon the previously discussed standards. The term "immediately" has been defined to mean "the next day" rather than "the next judicial day." Rule 1 of the Adminis-

trative Rules for the Magistrate Courts of West Virginia provides the means for an immediate detention hearing:

> (b) *On Call.* One magistrate in each county, on a rotating basis, shall be on call at all times other than regular office hours. On call duties shall be limited to initial appearances in criminal cases, emergency search warrants, domestic violence matters, and juvenile abuse and neglect matters.
>
> (1) Initial Appearances in Criminal Cases. Within the time periods provided for below, the on call magistrate shall contact the county or regional jail, whichever applies, and the juvenile detention facility that services the county, and shall inquire whether any person has been arrested in the county since the close of regular business hours or since his last contact with the jail. If an arrest has been made, the magistrate shall proceed immediately to the magistrate court offices to conduct an initial appearance and to set bail for such person.

*See also* Appendix A; E.1.

Court set forth seven relevant factors to be taken into account when preadjudication detention was being considered. *See* syl. pt. 4. The focus of the seven factors is the interest of society and the welfare of the child.

In making their report, Judge Starcher and his assistants not only reviewed the statute and case law, but also interviewed personnel involved in the various aspects of juvenile detention and reviewed statistics reported by the various detention centers. In his findings of fact, Judge Starcher reported that "the vast majority of personnel interviewed believe that there should be more of an emphasis on releasing versus detaining at the detention hearing" and that they "believe that it would be better to inappropriately release than inappropriately detain a youth." Judge Starcher concluded that the "failure to have mandatory rotation of juvenile case assignments is not a primary factor in the overcrowding of juvenile detention facilities and that the issue of whether West Virginia needs formalized detention standards may well be only a matter of preference. Detention problems can be resolved with or without such standards."

The two options set forth by the Special Master for consideration by this Court are substantially the same. The major difference is that the first option provides that the current detention standards—those found in W.Va.Code § 49-1-1 *et seq.* and *State v. Kinder*, discussed *supra*—be maintained while the second option recommends the adoption of statewide standards, such as those found in the ABA Juvenile Justice Standards. With the implementation of tighter detention standards, it is hoped that the detention population would be significantly reduced. However, since the possibility of overcrowding remains even with the adoption of new standards, many of the protective measures found in Option One are again recommended in Option Two.

The protective measures found in the report include requiring the hearing officer, circuit court judge, or arresting officer to call ahead to the detention center to determine if there is a vacancy. In addition, each circuit court should be required to develop a back-up program to assist detention hearing officers in the event the detention centers are at maximum capacity. Other alternatives to secure detention should be developed, such as in-home detention, house arrest, electronic monitoring, and emergency shelters. The detention center must have the authority to refuse to house a juvenile if the facility is at maximum capacity and must report any infraction of overcrowding to the Juvenile Justice Committee and the Department of Human Services. Finally, following an adjudicatory hearing, a juvenile shall not remain in detention longer than thirty days awaiting a dispositional hearing, and following a dispositional hearing, the juvenile shall remain in detention no longer than fourteen days before being moved into an appropriate placement. Again, this time limitation needs to be enforced and accurate records maintained.

Judge Starcher points out that if the detention criteria are adhered to, there should be no need for a rotating judge within a circuit, noting that the complexity of juvenile case assignments makes a multi-judge system unworkable in many cases. Finally, the Special Master recommends that accurate and complete detention facility status data be maintained through standardized monthly reports to the Department of Human Services and the Juvenile Justice Committee. The status report, which is to be created by the Department of Human Services, shall be filed monthly as new cases are received and must include each new detention, the reason(s) detained, the charge, the date in, and the date out. This report will be crucial in monitoring each facility and determining if overcrowding exists due to lack of adequate space or as a result of a back-up in the system.

■ After reviewing both options and the attached reports, this Court concludes that there is no need to provide for a rotating judge system if detention standards similar to those recommended by the American Bar Association and the Institute for

Judicial Administration are adopted. However, the recommended ABA standards must be modified to fit the specialized needs of our juvenile system. Therefore, we adopt juvenile detention standards, set forth in Appendices A, A.1, A.2, A.3, A.4, and A.5, which have been agreed upon by the Kanawha County Prosecutor, the Facilities Review Board, and the Department of Health and Human Resources. We believe the use of these guidelines will discourage the vague and often subjective method of deciding whether to detain a juvenile. Moreover, the juvenile detention standards adopted in this opinion are in accord with our State law as set forth in W.Va.Code § 49-1-1 *et seq.* (1990) and *State ex. rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984).

■ Equally important are the accompanying recommendations, discussed *supra,* which we adopt along with the Juvenile Detention Standards:

1. Before any juvenile can be sent to a detention facility, the arresting officer or the detention hearing officer must telephone the detention facility to determine whether there is a vacancy before the juvenile can be transported to that facility.

2. No facility can accept any juveniles beyond their licensed capacity and must immediately report any attempt to force them to do so to the Department of Human Services and the Juvenile Justice Committee.

3. A juvenile must remain in detention no longer than thirty days awaiting a dispositional hearing.

4. Following the dispositional hearing, a juvenile shall not remain in detention longer than fourteen days before moving the juvenile into an appropriate placement. Thus, the circuit courts must move swiftly and efficiently to avoid overcrowding.

5. In the event overcrowding occurs, the circuit courts must develop alternate methods of detention, such as in-home detention, electronic monitoring, and emergency shelters.

6. Within ten days after the end of each month, each detention facility must file a report with the Department of Human Services and the Juvenile Justice Committee which lists each new juvenile detained, the reason and charge, and the date the child enters and leaves the facility, including explanations of any interim absences. Also required is a listing of the number of children detained on each day of the month. The report form is to be prepared by the Department of Human Services.

We are confident that with time and effort the problem of overcrowding can be relieved. All the parties involved in this case, from the circuit court judges to the probation workers, appear deeply concerned with and committed to the juveniles entrusted to their care. We ask that they work together in implementing these new criteria and guidelines to better serve the children of this State. However, it is important to note that the Legislature has a part to play in this situation. Although we believe the number of facilities is adequate today, many of the structures need updating and the services improved. Moreover, we cannot discount the possibility that in the future, additional space and facilities will be needed. The welfare of our children is a high priority for this State, and the Legislature would be wise to plan accordingly.

■ However, the Legislature is not alone in its responsibilities. The Department of Human Services is duty bound to aggressively seek the funding from the Legislature necessary to fulfill those responsibilities. The Department's statutory obligations, found in W.Va.Code § 49-5-16a, may not be transferred to the judicial and legislative branches of government. Proper management of the facilities is an essential element of the solution.

Accordingly, we grant the writ as moulded, adopt the Juvenile Detention Standards set forth in Appendices A, A.1, A.2, A.3, A.4, and A.5, and order that they be implemented within sixty days. Further, the six additional elements set forth in this opin-

ion, including the report form which is to be prepared by the Department of Human Services, are also adopted and are to be implemented and in effect sixty days from the date of this opinion.

Writ granted as moulded.

## APPENDIX A

STANDARDS RELATING TO

Interim Status: Secure Detention of Accused Juvenile Offenders Between Arrest and Disposition

*Guidelines for status decision.*

A. Mandatory release.—The intake official should release the accused juvenile unless the juvenile:

  1. Is charged with a criminal-type delinquent behavior which in the case of an adult would be punishable by a sentence of not less than one year, and which if proven could result in commitment to a security institution, and one or more of the following additional factors is present:

    a. The crime charged is a **category one** (Appendix A.1) juvenile offense.

    b. The crime charged is a **category two or four** (Appendices A.2 and A.4) juvenile offense and there is a judicial finding that the juvenile presents a danger to the public if not securely detained, pursuant to an immediate full detention hearing in which the juvenile is represented by an attorney.

    c. The crime charged is a **category two, three, or four** (Appendices A.2, A.3, and A.4) juvenile offense and the juvenile is an escapee from detention or any commitment setting ordered pursuant to *W. Va. Code,* § 49–5–1 et seq; or the juvenile has a recent record of willful failure to appear at juvenile court proceedings and no measure short of secure detention can be imposed to reasonably ensure appearance.

    d. The crime charged is a violation of an alternative method of sentencing.

    e. The juvenile is waiting adjudication or disposition for an offense which would be a felony under criminal jurisdiction or a category one, two, three, or four offense and is charged with committing another offense during the interim period which would be a felony or a category one, two, three, or four offense. Another less restrictive means of supervising the juvenile such as electronic monitoring, home detention, or shelter care must have been tried and failed.

    f. The juvenile is awaiting adjudication or disposition for an offense which would be a felony under criminal jurisdiction or a category one, two, three, or four offense and is released on bond conditions but is found by a judicial authority to have committed a material violation of bond as defined in Appendix A.5 of these standards. Another less restrictive means of supervising the juvenile, such as electronic monitoring, home detention, or shelter care must have been tried and failed.

  2. The juvenile has been verified to be a fugitive from another jurisdiction, and an official of which has formally requested that the juvenile be placed in detention.

  3. Release may be upon bond conditions set by judicial authority.

B. Mandatory detention.—A juvenile who is excluded from mandatory release under subsection A is not, *pro tanto*, to be automatically detained. No category of alleged conduct in and of itself may justify a failure to exercise discretion to release in consideration of the needs of the juvenile and the community.

C. Discretionary situations.

  1. Release vs. detention. In every situation in which the release of an arrested juvenile is not mandatory, the intake official should first consider and determine whether the juvenile qualifies for an available diversion program, or whether any form of control

short of detention is available to reasonably reduce the risk of flight or misconduct. The official should explicitly state in writing the reasons for rejecting each of these forms of release.

2. Unconditional vs. conditional or supervised release. In order to minimize the imposition of release conditions on persons who would appear in court without them, and present no substantial risk in the interim, each jurisdiction should develop guidelines for the use of various forms of release based upon the resources and programs available, and analysis of the effectiveness of each form of release.

3. Secure vs. nonsecure detention. The intake official should consider nonsecure detention alternatives prior to committing a juvenile to a secure detention facility.

D. Protective Detention

1. Placement in a nonsecure detention facility solely for the protection of an accused juvenile should be permitted only where circumstances present an immediate threat of serious bodily harm to the juvenile if released.

2. In reaching the decision to take a juvenile into protective custody, or in reviewing a protective custody decision made by the arresting officer, the intake official should first consider all less restrictive alternatives, and all reasonably ascertainable factors relevant to the likelihood and immediacy of serious bodily harm resulting from interim release or control.

E. Custody.

1. The conditions outlined in 49–5–8(d) shall apply to all juveniles taken into custody, except that portion which refers to "the next judicial day" shall instead be read as "the next day." Even when circuit judges and juvenile referees are not available, the rules and regulations for magistrate courts require a magistrate to make telephone contact with the jails and juvenile secure detention facilities under their jurisdiction each and every day to ascertain if any adult or juvenile has been detained since the last contact period and immediately provide for a hearing for that individual.

Rule 1 of the Administrative Rules for the Magistrate Courts of West Virginia, which requires the on-call magistrates to contact the jails and juvenile detention facilities under that magistrate's jurisdiction, applies equally to adults and juveniles held within those facilities.

2. A juvenile who is taken into custody and found eligible for release except for the fact that no responsible adult can be found into whose custody the juvenile could be released may be detained until such time as a responsible adult can be found into whose custody the juvenile can be delivered. However, at the time the juvenile is taken into custody, a written record must be made of all attempts to locate a responsible adult in whose custody the juvenile can be released. This procedure must take place each and every day the juvenile is detained, and after the initial detention, a lawyer must be appointed to represent the juvenile.

F. Threatening Witnesses.

One additional ground for detention is a determination by a judicial authority that there exists a substantial probability of danger to witnesses should the applicant be granted bail.

| CATEGORY ONE JUVENILE OFFENSE | STATE CODE |
|---|---|
| Treason | § 61–1–1 et seq. |
| Murder, 1st or 2nd Degree, or Felony Murder | § 61–2–1, § 61–8D–2 |
| Murder of Child by Parent | § 61–8D–2 |
| Kidnapping | § 61–2–14a |
| Sexual Assault, 1st or 2nd Degree | § 61–8B–3, § 61–8B–4 |
| Robbery, Aggravated or Non-aggravated | § 61–2–12 |
| Malicious Assault | § 61–2–9 |
| Possession, Manufacture or Delivery of Controlled Substances Other Than Narcotics (except possession of less than 15 grams of marijuana) | § 60A–4–401 et seq. |
| Possession, Manufacture/Delivery of Narcotics | § 60A–4–401(a), § 60A–4–408 |
| Arson, 1st Degree | § 61–3–1 |
| Sexual Assault of Spouse | § 61–8B–6 |
| Sexual Abuse, 1st Degree | § 61–8B–7 |
| Brandishing a Deadly Weapon | § 61–7–11 |
| Carrying a Concealed Deadly Weapon | § 61–7–8 |
| Violation of Any Alternative Sentencing | § 62–11B–9 |
| Attempted Category One Offense | § 61–11–8 |

APPENDIX A.2

| CATEGORY TWO JUVENILE OFFENSE | STATE CODE |
|---|---|
| Child Sexual Abuse | § 61–8D–5(a) |
| Incest | § 61–8–12 |
| Child Abuse, Injurious | § 61–8D–3 |
| Child Neglect, Injurious | § 61–8D–4 |
| Burglary | § 61–3–11 |
| Sexual Assault, 3rd Degree | § 61–8B–5 |
| Voluntary Manslaughter | § 61–2–4 |
| Sexual Abuse, 2nd Degree | § 61–8B–8 |
| Unlawful Wounding | § 61–2–9 |
| Attempted Category Two Offense | § 61–11–8 |

APPENDIX A.3

| CATEGORY THREE JUVENILE OFFENSE | STATE CODE |
|---|---|
| DUI (causing death) | § 17C–5–2 |
| Abduction | § 61–2–14 |
| Child Under 16, Sexual Procurement | § 61–8D–5(b) |
| Extortion | § 61–2–13 |
| DUI, 2nd or 3rd Offense or Personal Injury | § 17C–5–2 |

| CATEGORY THREE JUVENILE OFFENSE | STATE CODE |
|---|---|
| Possession/Placing Explosives | § 61–3–7 |
| Malicious Killing of Animal | § 61–3–27 |
| Arson, 2nd, 3rd, or 4th Degree | §§ 61–3–2, –3, –4 |
| Unlawful Shooting | § 61–2–11 |
| Involuntary Manslaughter | § 61–2–5 |
| Negligent Homicide (vehicular) | § 17C–5–1 |
| Battery | § 61–2–9(c) |
| Hit and Run, Personal Injury | § 17C–4–1 |
| Escape from Jail or Department of Corrections | § 61–5–10, § 61–5–12a |
| Sexual Abuse, 3rd Degree | § 61–8B–9 |
| Attempted Category Three Offense | § 61–11–8 |

APPENDIX A.4

| CATEGORY FOUR JUVENILE OFFENSE |
|---|
| All other charges of criminal-type delinquent behavior which, in the case of an adult would be punishable by a sentence of not less than one year and if proven, could result in a commitment to a security facility, but is not herein enumerated, will be considered under the terms and conditions of Category 2 offenses. |

APPENDIX A.5

DEFINITIONS OF TERMS RELEVANT TO THE STANDARDS

*Commitment setting.* Any out-of-home setting in which a juvenile is placed pursuant to order of a judicial authority under *W.Va.Code*, § 49–5–1 et seq.

*Control.* A restricted or regulated nondetention interim status, including release on conditions or under supervision.

*Detention.* Placement during the interim period of an accused juvenile in a home or facility other than that of a parent, legal guardian, or relative, including facilities commonly called "detention," "shelter care," "training school," "receiving home," "group home," "foster care," and "temporary care."

*Final disposition.*
The implementation of a circuit court order of
A. release based upon a finding that the juvenile is not guilty of committing the offense charged; or
B. supervision, punishment, treatment, or correction based upon a finding that the juvenile is guilty of committing the offense charged.

*Interim period.* The interval between the arrest or summons of an accused juvenile charged with a criminal offense and the implementation of a final judicial disposition. The term "interim" is used as an adjective referring to this interval, e.g., "interim status," "interim liberty," and "interim detention."

*Judicial authority.* An official statutorily designated within a local juvenile justice system to conduct hearings on juvenile delinquency matters; circuit court judges, juvenile referees, and any magistrate performing in the absence of a juvenile referee.

*Material violation of bond.* A violation of a circuit court ordered release condition in which the juvenile is found by the court to pose a risk to community safety if not detained, including but not limited to charges of criminal-type conduct, a positive drug screen when the juvenile has been charged or adjudicated upon drug-related offense(s), or involvement with other persons prohibited by the circuit court in consideration of public safety or judicial process; excluding status offense-type behavior including but not limited to violations related to school attendance, curfew, or alleged incorrigible behavior.

*Nonsecure detention facility.* A detention facility that is open in nature and designed to allow maximum participation by the accused juvenile in the community and its resources. It is intended primarily to minimize psychological hardships on an accused juvenile offender who is held out-of-home rather than to restrict the freedom of the juvenile. These facilities include, but are not limited to:

    A. single family foster homes or temporary boarding homes;

    B. group homes with a resident staff, which may or may not specialize in a particular problem area, such as drug abuse, alcohol abuse, etc.; and

    C. facilities used for the housing of neglected or abused juveniles.

*Parent or responsible adult.*

    Any of the following:

    A. the juvenile's natural parents, stepparents, or adopted parents, unless their parental rights have been terminated;

    B. if the juvenile is a ward of any person other than his or her parent, the guardian of the juvenile;

    C. if the juvenile is in the custody of some person other than his or her parent whose knowledge of participation in the proceedings would be appropriate, the juvenile's custodian; and

    D. separated and divorced parents, even if deprived by judicial decree of the respondent juvenile's custody.

*Release.* The unconditional and unrestricted interim liberty of a juvenile, limited only by the juvenile's promise to appear at judicial proceedings as required. It is sometimes referred to as "release on own recognizance."

*Release on condition.* The release of an accused juvenile under written requirements that specify the terms of interim liberty, such as living at home, reporting periodically to a court officer, or refraining from contact with named witnesses.

*Release under supervision.* The release of an accused juvenile to an individual or organization that agrees in writing to assume the responsibility for directing, managing, or overseeing the activities of the juvenile during the interim period.

*Secure detention facility.* A facility characterized by physically restrictive construction and procedures that are intended to prevent an accused juvenile who is placed there from departing at will.

*Security institution.* A commitment setting in which juveniles placed may be restricted from normalized community involvement by use of bars, fences, locked rooms, or physical restraint.

*Status decision.* A decision made by an official that results in the interim release, control, or detention of an arrested juvenile. In the adult criminal process, it is often referred to as the bail decision.