483 S.E.2d 526

STATE ex rel. Gretchen O. LEWIS, Secretary, West Virginia Department of Health and Human Resources, Petitioner,

v.

Honorable Booker T. STEPHENS, Chief Judge of the Circuit Court of McDowell County, and Honorable Kendrick King, Judge of the Circuit Court of McDowell County, Respondents.

No. 23531.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1996.

Decided Dec. 18, 1996.

Barbara L. Baxter, Michelle T. Mensore, Asst. Attys. Gen., Charleston, for Petitioner.

John M. Hedges, Byrne & Hedges, Morgantown, for Respondents.

PER CURIAM.

The Petitioner, Gretchen O. Lewis, Secretary of the West Virginia Department of Health and Human Resources ("the Department"), seeks a writ of prohibition[1] against the Honorable Booker T. Stephens and the Honorable Kendrick King, to prevent them from ordering juvenile detention centers operated by the Department to exceed their legal capacity. The Petitioner also asks the Court to require written findings as a prerequisite to ordering secure detention of juveniles.[2] In accord with our decision in *State ex rel. West Virginia Department of Health and Human Resources v. Frazier*, 198 W.Va. 678, 482 S.E.2d 663 (1996), we grant the writ as moulded, on the issue of findings, and remand this case to the circuit court.

David A.,[3] a seventeen-year-old juvenile, was arrested on June 3, 1996, and charged with breaking and entering, destruction of property, obstruction of justice, disorderly conduct, and public intoxication. Shortly after midnight on June 4, David A. was brought before a magistrate for a detention hearing. The magistrate set bail at $10,000, and ordered that the boy be held at the Southern Regional Juvenile Detention Center ("SRJDC")[4] in Princeton until a hearing was held in circuit court later the same day.

David A. appeared before Judge Booker T. Stephens at 4:30 p.m. on June 4. After the hearing, the circuit court issued an order directing that David A. be detained at

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

2. The Department, through its petition, also asks the Court to direct the circuit courts not to order that juveniles be detained more than fourteen days after dispositional hearings. Because the order that the Petitioner seeks to prohibit in this case relates to preadjudicatory detention and that issue is not presented on the facts of this case, we do not address it in this opinion.

In addition to the issues presented in its petition in this case, the Department raised an additional issue in its response memorandum filed jointly in this case and in *State ex. rel. Dep't of Health and Human Resources v. Frazier*, 198 W.Va. 678, 482 S.E.2d 663 (1996). Through the response memorandum, the Department requests a directive from this Court that circuit court judges are not authorized to make facility-specific placements, "when judges determine that a juvenile should be placed out-of-home and not into the custody of the Department of Corrections ... or into a detention center." Because the circuit court in this case ordered placement of David A. into a detention center, that issue is not before us in this case.

3. Consistent with our practice, we identify the juvenile in this case by initials only. *See In re Jonathan P.*, 182 W.Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989).

4. The SRJDC in Princeton is a 15-bed juvenile secure detention facility operated by DHHR. It was designed to provide short-term detention for juveniles pending disposition of charges brought against them. Under *Facilities Review Panel v. Coe*, 187 W.Va. 541, 420 S.E.2d 532 (1992), such pre-adjudicatory detention cannot exceed 30 days. *Id.* at 545, 420 S.E.2d at 536. The monthly population report of the SRJDC for June, 1996, however, shows that 7 of its 15 beds were occupied by juveniles awaiting decisions on transfer to adult status, and another 4 were devoted to post-dispositional youths awaiting space at the Industrial Home for Youth at Salem.

SRJDC until his adjudicatory hearing.[5] In the order, the court noted that the prosecuting attorney had been unable to contact the youth's parents after several attempts. The court found that there was no reasonable less restrictive alternative to detention, "[a]fter due consideration of the nature of the charges contained in the petition, including a felony charge of breaking and entering which is punishable by imprisonment if committed by an adult[.]" The court continued:

> With it appearing to the Court that the Southern West Virginia Regional Juvenile Detention Center is at capacity upon its acceptance of the detention of another infant defendant who is charged in this matter with this infant defendant, it is OR- DERED that the staff and administration at said facility temporarily exceed its population limitation in order to accept this infant defendant pending his hearing at 9:30 a.m. on June 10, 1996.

The State, on behalf of the Department, filed this petition for a writ of prohibition on June 7, 1996, asserting that the circuit court's order was in violation of the standards for juvenile detention set out by this Court in *Facilities Review Panel v. Coe*, 187 W.Va. 541, 420 S.E.2d 532 (1992). On or about the same date, the Department filed a petition requesting similar relief in the context of post-adjudicatory detention of juveniles. *See Frazier*, 198 W.Va. at 680, 482 S.E.2d at 665.

■ We first address the Department's assertion that the circuit court failed to make findings that are a necessary prerequisite to committing a juvenile to a secure detention facility. The requirement that a judicial officer make appropriate findings is set out in West Virginia Code section 49–5A–3 (1996): "After a detention hearing conducted by a judge, magistrate or referee an order shall be forthwith entered setting forth the find-

ings of fact and conclusions of law with respect to further detention pending hearing and disposition of the child...." [6] In *Coe*, we adopted standards relating to the secure detention of accused juvenile offenders during the time between arrest and disposition. The *Coe* guidelines make release of an accused juvenile mandatory, except in enumerated circumstances. *See* 187 W.Va. at 546, 420 S.E.2d at 537. The Respondents assert, and the Petitioner does not dispute, that the Petitioner fell within category A.1.f of the *Coe* standards.[7] The Petitioner only complains that the circuit court's order did not include the necessary findings.

■ Paragraph A.1.f makes an exception to the general rule of release pending adjudication when a juvenile:

> 1. Is charged with a criminal-type delinquent behavior which in the case of an adult would be punishable by a sentence of not less than one year, and which if proven could result in commitment to a security institution, and one or more of the following additional factors is present:
>
> ....
>
> f. The juvenile is awaiting adjudication or disposition for an offense which would be a felony under criminal jurisdiction or a category one, two, three, or four offense and is released on bond conditions but is found by a judicial authority to have committed a material violation of bond as defined in Appendix A.5 of these standards. Another less restrictive means of supervising the juvenile, such as electronic monitoring, home detention, or shelter care must have been tried and failed.

*Coe*, 187 W.Va. at 546, 420 S.E.2d at 537. In addition, paragraph C.1 of the *Coe* guidelines requires a written statement regarding the

---

5. The order issued by the circuit court is signed by Judge Kendrick King, because Judge Stephens was unavailable when the order was ready for signature. The case was later reassigned to Judge King, because he was already presiding over other charges against David A. Both judges are named as respondents in this action.

6. *See also* W.Va.Code § 49–5–1(d) (1995), stating that, "[a]t the conclusion of any hearing [in a

juvenile proceeding], the court shall make findings of fact and conclusions of law, and the same shall appear of record." (Effective June 7, 1996, this directive appears in W.Va.Code § 49–5–2(m) (1996)).

7. The Respondents represent that David A. had earlier juvenile offenses pending before Respondent Judge King.

necessity of secure detention in every case in which it is ordered:

> In every situation in which the release of an arrested juvenile is not mandatory,[8] the intake official should first consider and determine whether the juvenile qualifies for an available diversion program, or whether any form of control short of detention is available to reasonably reduce the risk of flight or misconduct. The official should explicitly state in writing the reasons for rejecting each of these forms of release.[9]

*Id.* at 546–47, 420 S.E.2d at 537–38 (footnotes added). At a minimum, a judge ordering preadjudicatory detention of a juvenile under paragraph A.1.f of these guidelines should include in the order findings regarding the other offense for which the juvenile is awaiting disposition, the violation of bond that has been committed, and what other less restrictive means of supervision have been tried and have failed. Without such findings, this Court is without a factual basis for review. *See State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 395, 317 S.E.2d 150, 159 (1984). As we said in syllabus point 6 of *Kinder,* "[c]ommitting officials have a duty to explain in writing their reasons for detaining a child, their choice of placement, and if they require secured bail, their reasons for doing so. This duty is required by W.Va.Code, 49–5A–3 (1978)." 173 W.Va. at 388, 317 S.E.2d at 151. We therefore remand the case to the circuit court and direct it to make findings on the record consistent with the requirements set out in this opinion. If the Petitioner then

disputes the propriety of secure detention, it may pursue an appropriate remedy.

▪ We next address the Petitioner's contention that the circuit court violated this Court's directive in *Coe* when it ordered the SRJDC to accept the Petitioner at a time when the facility was already at capacity. Syllabus point four of *Coe* provides that "[n]o facility can accept any juveniles beyond their licensed capacity and must immediately report any attempt to force them to do so to the Department of Human Services and the Juvenile Justice Committee."[10] 187 W.Va. at 542, 420 S.E.2d at 533. The Respondent judges maintain that the State's juvenile detention centers consistently operate at or near capacity, and judges are left with no alternative when secure detention is required.

▪ We begin our analysis with a review of the relevant statutes. West Virginia Code § 49–5A–2 (1996) sets out the requirement of a detention hearing:

> A child who has been arrested or who under color of law is taken into the custody of any officer or employee of the State or any political subdivision thereof shall be forthwith afforded a hearing to ascertain if such child shall be further detained.... Unless the circumstances of the case otherwise require, taking into account the welfare of the child as well as the interest of society, such child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency.

8. Under *Coe,* detention is never mandatory. Paragraph B of the *Coe* guidelines, entitled "Mandatory detention," provides that "[n]o category of alleged conduct in and of itself may justify a failure to exercise discretion to release in consideration of the needs of the juvenile and the community." 187 W.Va. at 546, 420 S.E.2d at 537.

9. The fact that the juvenile met the *Coe* guidelines for detention left only the duty upon the court to make these findings. The fact that the parents could not be located would certainly be a strong factor in detaining the juvenile.

10. The Juvenile Justice Committee, now known as the Juvenile Facilities Review Panel, filed a

brief in this case as amicus curiae. In its brief, the Panel requested several things, including the appointment of a special master to conduct a review of the juvenile detention system in West Virginia. We decline to take such action, but acknowledge the obligation of the Department to file a comprehensive annual review of its programs and services pursuant to Code § 49–5B–7(a) (1996), and the ongoing assessment and planning obligations of the Department and the Legislative Commission on Juvenile Law, *see* W.Va.Code §§ 49–5A–6a (1996), 49–5C–1 & –2 (1995). As we pointed out in *Frazier,* 198 W.Va. at 684, 482 S.E.2d at 669, the Department has routinely ignored this obligation. Furthermore, the Juvenile Justice Committee is set to sunset in July, 1997, and will no longer be in existence to receive such reports unless the legislature choos-

West Virginia § 49–5–8(d) (1996) delineates the function of a judicial officer at a detention hearing:

> The referee, judge or magistrate shall hear testimony concerning the circumstances for taking the child into custody and the possible need for detention in accordance with section two [§ 49–5A–2], article five-a of this chapter. The sole mandatory issue at the detention hearing shall be whether the child shall be detained pending further court proceedings. The court shall, if advisable, and if the health, safety and welfare of the child will not be endangered thereby, release the child on recognizance to his or her parents, custodians or an appropriate agency...."

These statutes entrust to the judge or magistrate the decision whether to detain or release a juvenile accused of committing a crime. The responsibility for providing facilities necessary to house juveniles who require detention, however, has been entrusted to the Department:

> It is the purpose and intent of the legislature to provide for the creation of all reasonable means and methods that can be established by a humane and enlightened state, solicitous of the welfare of its children, for the prevention of delinquency and for the care and rehabilitation of delinquent children. It is further the intent of the legislature that this State, through the department of welfare [division of human services], establish, maintain, and continuously refine and develop, a balanced and comprehensive state program for children who are potentially delinquent or are delinquent, other than those children committed to the care and custody of the department of corrections.

W.Va.Code § 49–5B–2 (1996). The legislature has also provided that "[t]he department of human services shall provide care in special boarding homes for children needing detention pending disposition by a court having juvenile jurisdiction or temporary care following such court action[,]" W.Va.Code § 49–2–16 (1996), and that "[t]he secretary of the department of health and human resources and the legislative commission on juvenile law shall develop a comprehensive plan to maintain and improve a unified state system of predispositional detention for juveniles." W.Va.Code § 49–5A–6a (1996). This duty is mandatory, *Facilities Review Panel v. Greiner*, 181 W.Va. 333, 336, 382 S.E.2d 527, 530 (1989), and is supported by a duty to aggressively seek the necessary funding for juvenile facilities and services from the legislature. *Coe*, 187 W.Va. at 545, 420 S.E.2d at 536.[11]

The parties to this action, and the Facilities Review Panel as amicus curiae, agree that several problems underlie the overcrowding issue. Many beds that were intended for short-term detention are being used by youths in some stage of adult transfer status. Similarly, overcrowding in institutions operated by the Department of Corrections causes many post-dispositional juveniles to remain in detention centers for extended periods while they await placement in the West Virginia Industrial Home for Youth at Salem or other institutions.[12]

es to extend it or otherwise maintains it in some other format.

11. The Court takes judicial notice of the November 20, 1996, draft of The West Virginia Comprehensive Youth Services Plan published by the Youth Services Oversight Group of the Office of Social Services, Bureau for Children and Families of the DHHR. We applaud the plan's recommendations for expanding and improving juvenile secure detention facilities around the state. The plan recommends establishing or building a facility exclusively for youthful offenders who are awaiting a decision on transfer to adult status, replacing the Kanawha Home for Children in Dunbar with a larger, regional facility, making capital improvements and small expansions in capacity at the Parkersburg, Princeton, and Martinsburg juvenile detention centers, expanding the capacity of child emergency shelters to provide an alternative to predisposition detention facilities when appropriate, and supporting the Division of Corrections in planning for additional facilities. Implementation of these measures would help alleviate the problem of overcrowding highlighted by this case and *Frazier*. DHHR should discharge its statutory duty by aggressively seeking the necessary funding for these proposals.

12. The solution to that problem may lie in the DHHR bringing a mandamus action against the Division of Corrections, seeking to compel the Division of Corrections to accept juveniles who have been sentenced to the Industrial Home for Youth at Salem. In an analogous action in the adult context, *State ex rel. Smith v. Skaff*, 187 W.Va. 651, 420 S.E.2d 922 (1992), this Court prohibited the Division of Corrections from lodg-

Regardless of the source of the overcrowding, however, the statutes quoted above make clear that the legislature intended for the circuit judges to exercise discretion with respect to whether a juvenile requires detention pending an adjudication of his or her case, and for the Department to provide appropriate facilities for juveniles determined by a judicial officer to require predispositional detention. Thus, the judges in this case performed the duty committed to them by statute. It is the performance of the DHHR's statutory obligations which are the real issue here.

The problem of overcrowding at juvenile detention centers is not a new one. In 1992, this Court adopted juvenile detention standards aimed, at least in part, at relieving overcrowding. At that time, it appears that the Court may have believed that the number of facilities was adequate. *See Coe*, 187 W.Va. at 545, 420 S.E.2d at 536. However, we emphasized at that time the role that not only the DHHR, but also the legislature, should play: "many of the structures need updating and the services improved. Moreover, we cannot discount the possibility that in the future, additional space and facilities will be needed. The welfare of our children is a high priority for this State, and the Legislature would be wise to plan accordingly." *Id.* It no longer appears that the State's juvenile facilities are adequate in number, and the remedy for the shortage of facilities lies in the Department discharge of its responsibilities, and *not* in removing from the circuit courts of this State the authority to make placement decisions. The Respondents in this case were caught between their statutory duty to order secure detention in appropriate circumstances for a juvenile pending his dispositional hearing, and the *Coe* mandate prohibiting overcrowding of juvenile detention facilities. As we said in *Frazier*,

> The Department's failure to establish the statutorily-required facilities for status offenders and to provide sufficient in-state juvenile facilities forces us to reexamine our ruling in *Coe.* At first glance, the *Coe*

ruling that prohibits a juvenile facility from accepting juveniles in excess of its capacity, appears to determine the outcome of this case. In practice, however, the capacity limits that govern juvenile facilities do not operate as a complete bar to the acceptance of additional juveniles because a facility may secure a waiver from the Office of Social Licensing of its given limit by stating that "the health, safety or well-being of a child would not be endangered thereby." W.Va.Code § 49–2B–7 (Supp.1996). While we are not advocating an endless cycle of reliance on waivers to avoid our ruling in *Coe*, we are equally disinclined to allow DHHR to use *Coe* as a shield to prevent circuit courts from ordering placements to in-state facilities. Accordingly, we hold that notwithstanding the directive issued by this Court in *Coe*, which addresses a juvenile facility's authority to accept additional juveniles upon reaching its capacity, a circuit court does not lack the authority to order that a juvenile be placed at a facility which is at capacity. When a court-ordered placement will result in the operation of a facility over capacity for more than a few days, the Department must determine whether to seek a waiver of the capacity requirement or seek the relocation of juveniles already placed at that particular facility to avoid the concerns of overcrowding discussed in *Coe.* The DHHR cannot abrogate its responsibility, as part of the executive branch of state government, to construct or establish the necessary in-state facilities for juvenile care and treatment. As we emphasized in *Coe*, "[t]he Department of Human Services is duty bound to aggressively seek the funding from the Legislature necessary to fulfill ... [its] responsibilities[ ]" with regard to the construction of additional juvenile facilities, as well as the updating of existing structures. 187 W.Va. at 545, 420 S.E.2d at 536.

*Frazier*, 198 W.Va. at 688–89, 482 S.E.2d at 673–74 (footnotes omitted).

Based on the foregoing, we remand the case to the circuit court for further findings

---

ing inmates beyond capacity in county or regional jail facilities once the inmates had been sentenced to a Division of Corrections facility. 187 W.Va. at 654–55, 420 S.E.2d at 925–26.

consistent with this opinion, and the writ of prohibition sought by the Department is hereby granted as moulded.

Writ Granted as Moulded.