# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2023 Term

_____

No. 22-ICA-74

_____

FILED

**December 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DD OIL COMPANY,
Appellant Below, Petitioner,

v.

STATE OF WEST VIRGINIA, EX REL., HAROLD D. WARD, CABINET
SECRETARY, WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION,
Defendant Below, Respondent.

_____

Appeal from West Virginia Environmental Quality Board

REVERSED AND REMANDED

_____

Submitted: May 16, 2023
Filed: December 8, 2023

J. Morgan Leach
Vienna, West Virginia



Ryan J. Umina
Umina Legal
Morgantown, West Virginia
Counsel for Petitioner

Charles Scott Driver
West Virginia Department of
Environmental Protection, Office of
Legal Services
Charleston, West Virginia
Counsel for Respondent


JUDGE SCARR delivered the Opinion of the Court.

JUDGE LORENSEN dissents and reserves the right to file a separate opinion.

SCARR, JUDGE:

Petitioner DD Oil Company ("DD Oil") appeals from the Final Order of the West Virginia Environmental Quality Board ("EQB") which dismissed its appeal from Order 2022-6 of the West Virginia Department of Environmental Protection ("WVDEP"). Order 2022-6 had declined to annul several Notices of Violations ("NOVs") for various wells owned by DD Oil.

EQB dismissed DD Oil's appeal on the ground that it lacked subject matter jurisdiction because the contested Notices of Violation had been annulled and Order 2022-6 had been vacated shortly before the hearing on the appeal, allegedly making the matter moot.[1] First, as discussed below, we hold that the appeal was not moot because EQB could grant relief other than annulling the NOVs. For example, it had authority to modify DD Oil's permits so as to extend their duration. Moreover, even if DD Oil's appeal was technically moot, the EQB had jurisdiction to review the actions of the WVDEP because they presented issues of great public interest, and because they were "capable of repetition yet evading review."

---

[1] During oral argument, counsel informed the Court that DD Oil had obtained new permits for the wells in question. This presents an additional issue pertaining to mootness which we will also address below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

DD Oil owns and operates a number of oil and gas wells in Ritchie County, West Virginia, including three wells designated API #47-085-10399, API #47-085-10400, and API #47-085-10401. On March 26, 2020, DD Oil obtained work permits from the WVDEP to conduct drilling at these wells. Under W. Va. Code R. § 35-4-5.2.g, work must commence on a drilling site within two years from the date of issuance of the permit or the permit will expire. In this case, that meant that drilling would have to commence by March 26, 2022. There is no question that DD Oil commenced drilling within two years of when the permits were issued.

A question arose, however, as to whether DD Oil ceased operations at the well sites for a period of thirty continuous days. This is important because once drilling stops for thirty days,[2] the operator has six months to complete reclamation.[3] At the end of that period, the permit expires. Whether these permits expired has been disputed by the parties, with WVDEP taking the position that the permits expired, and new ones were needed, and DD Oil arguing that the permits did not expire. According to WVDEP, drilling at the sites stopped on September 25, 2020, and the permits therefore expired on April 25, 2021. DD Oil, on the other hand, contends that their operations were ongoing until WVDEP

---

[2] W. Va. Code R. § 35-5-2.6 ("'Completion of the drilling process' shall mean the date on which a drilling rig ceases operation on the drilling site for more than thirty (30) consecutive days.")

[3] W. Va. Code § 22-6A-14(a) (3) (2017).

stopped them, and, consequently, they should have had additional time to complete their work.

On May 17, 2021, WVDEP informed DD Oil that it did not have valid permits to perform hydraulic fracturing ("fracking") on the wells at issue. On June 14, 2021, WVDEP inspectors visited the well sites and observed equipment indicating that DD Oil was preparing to frack the wells. On July 16, 2021, WVDEP inspectors conducted an inspection of the well sites and concluded that DD Oil was engaging in fracking activities at API #47-085-10399 without a permit and intended to frack the other two wells. That same day, the WVDEP issued a Finding of Imminent Danger and Cease Operations Order to DD Oil.

Thereafter, the parties would spend more than a year litigating the validity of their permits in administrative proceedings and a civil action in the Circuit Court of Ritchie County, with DD Oil unable to continue operations at the subject properties. DD Oil contends that WVDEP deliberately dragged out these proceedings and then attempted to moot the dispute, mere days before a scheduled hearing with the EQB, by unilaterally annulling the NOVs and the contested order, to prevent DD Oil from obtaining a definitive resolution of the issue which might be unfavorable to WVDEP.

The Finding of Imminent Danger and Cease Operations Order stated that DD Oil was in violation of the state code and regulations for: "Fracking outside of allotted

3

completion time. Fracking without a permit." DD Oil was "ordered to cease further operations until [it was] determined that the imminent danger [had] been abated." DD Oil was warned that it could be subject to civil penalties, misdemeanor charges, and injunctive relief.[4] The Finding of Imminent Danger informed DD Oil that it had a right to apply for a formal hearing to contest the Finding of Imminent Danger within fifteen days.

Prior to the expiration of the fifteen days, however, on July 20, 2021, the WVDEP issued an NOV against DD Oil for unpermitted work on the subject wells. This NOV gave DD Oil seven days to abate the alleged violations. The NOV warned that: "Failure to abate the violation by that date will result in bond forfeiture and may result in assessment of civil penalties, filing of misdemeanor charges, and/or an action for injunctive relief."

On July 23, 2021, even before the time for abatement had passed, WVDEP filed its Application for Injunctive Relief against DD Oil in the Circuit Court of Ritchie County. On August 2, 2021, WVDEP filed a Motion for Temporary Restraining Order in that matter. By Order dated August 4, 2021, the circuit court entered an order granting the

---

[4] W. Va. Code § 22-6-6(a) (1994) provides in pertinent part that it shall be "unlawful for any person to commence any well work, including site preparation which involves any disturbance of land, without first securing from the director a well work permit." Subsection (i) provides that: "Any person who violates any provision of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not more than five thousand dollars, or be imprisoned in the county jail not more than twelve months, or both fined and imprisoned."

temporary restraining order and ordering DD Oil to comply with the Finding of Imminent Danger and Cease Operations Order. The order also scheduled an evidentiary hearing on the WVDEP's preliminary injunction which was heard on August 11, 2021.

Following this hearing, the circuit court entered an order on August 27, 2021, denying the preliminary injunction and dissolving the temporary restraining order. The circuit court found that WVDEP did not establish that the work at the subject wells created a risk of irreparable harm that would justify an injunction. The circuit court declined to address the issue of whether the permits were valid, holding that the question of validity had to be resolved through the administrative process.[5] The circuit court's order did not set aside the Finding of Imminent Danger and Cease Operations Order or the NOV.

In August of 2021, WVDEP reached out to DD Oil's well service providers and informed them that DD Oil did not have valid permits for the subject wells. As a result, the well service providers refused to perform work on the subject wells.[6] In one instance,

---

[5] In the words of the circuit court, "[a]s to the question of the expiration of the permits issued, that matter must first be administered through the administrative process." Order at 5, Designated Record ("D.R.") at 50.

[6] Working on the well sites when the operator did not have a valid permit could expose the service providers to liability. W. Va. Code R. § 35-4-5.6 provides: "Parties Responsible. All contractors and drillers, including all service companies carrying on business or doing work in oil and gas fields in West Virginia, as well as lease holders and operators generally, shall take notice of and are hereby directed to observe and apply the provisions of W. Va. Code § 22-6 and this rule; and all contractors, drillers, service companies and operators shall be held responsible for violations thereof."

WVDEP contacted a service provider, Reliance Well Services, and told them not to frack **after** the circuit court had already ruled from the bench that it was going to deny the preliminary injunction and dissolve the temporary restraining order. This caused the service provider's counsel (who also represented DD Oil) some concern. In an e-mail dated August 24, 2021, he informed WVDEP that he had been contacted by his client, Reliance Well Services, and they told him that they were scheduled to conduct fracking operations the next day, but WVDEP had instructed them not to do so. He went on to say:

> Frankly, I think this is not at all what Judge Sweeney contemplated, and I think it gives DD Oil Company a successful claim against WVDEP. … My current thinking is that WVDEP is in contempt of court and liable for punitive damages. Please call me. I need WVDEP to tell Reliance Well Services to go ahead with the frac tomorrow.

D.R. 52-3. Despite this e-mail, WVDEP did not tell the service providers that they could proceed with well related projects.

On September 9, 2021, the WVDEP issued a letter to DD Oil stating that certain forms, including Form WR-35, were outstanding on several wells, including the subject wells. Form WR-35, titled "Well Operator's Report of Drilling, Fracturing and/or Stimulating or Physical Change," must be filed within ninety days after drilling has ceased for more than thirty days and the reclamation period of six months has expired. DD Oil asserted that Form WR-35s on the subject wells were not due and the WVDEP's request was premature as well work had not been completed.

6

On February 1, 2022, WVDEP issued Notices of Violation (NOVs) 11778, 11779, 11780, and 11781 for violations of W. Va. Code R. § 35-4-12.2a., the regulation which requires certain forms, including Form WR-35, to be filed within ninety days after the completion of permitted well work.[7] On February 14, 2022, WVDEP issued an Order to Cease Operations for Failure to Abate Violation.

On February 18, 2022, and February 25, 2022, DD Oil applied for an annulment of the NOVs, asserting that it had not "completed well work that would trigger the ninety (90)-day period for submitting form WR-35." On March 9, 2022, the WVDEP issued Order 2022-6 denying DD Oil's application to annul the NOVs on the basis that the NOVs had been properly issued.

On March 23, 2022, DD Oil filed its appeal of Order 2022-6 to the EQB, asserting both procedural and substantive reasons for reversing the WVDEP. Among other things, its Appeal From Order and Annulment Review contested the findings in the order that it had ceased operations for a period of thirty days, contending that it had "engaged in continuous drilling operations from September 25, 2020 to July 16, 2021." It also asserted that WVDEP had failed to do a site inspection during its annulment review as required by

---

[7] These NOVs warned that failure to abate the alleged violation within seven days, *i.e.*, by February 8, 2022, would result in bond forfeiture, and could also result in civil penalties and misdemeanor charges.

statute. The Questions of Fact listed in this notice of appeal included "[w]hether or not drilling was complete on the Subject Wells." The relief requested specifically included the extension of its permits "to allow completion of the permitted well work" and a declaratory ruling as to whether the permits were still valid.

The appeal hearing was scheduled for July 14, 2022. On July 8, 2022, six days before the hearing, WVDEP filed its Motion to Dismiss DD Oil's appeal on the basis that it was vacating Order 2022-6 and annulling the NOVs. DD Oil opposed this motion, arguing that its appeal was not moot because EQP could grant relief other than the annulment of the NOVs, such as extending the permits by the amount of time spent in litigation with WVDEP so as to allow completion of the necessary well work.

On July 13, 2022, one day before the hearing, the WVDEP entered Order 2022-9. In that order the WVDEP vacated its earlier order (2022-6) and annulled the NOVs on the basis that a "special inspection" was not performed in relation to the NOVs as required by W. Va. Code § 22-6-4 (1994). Although WVDEP acknowledged that the NOVs were procedurally deficient because a site inspection was not done, it never admitted that the permits were still valid, that WR-35 Forms were not yet required, or that the well sites had not been inactive for a thirty-day period before NOVs and orders to cease operation were issued.

During the hearing on July 14, 2022, DD Oil's attorneys asked EQB to modify the permits so as to extend them by a year to make up for the time lost in litigating with WVDEP. Basically, they were asking the EQB to reset the clock to the time when WVDEP issued its first Finding of Imminent Danger and Cease Operations Order.[8] Although everyone agreed that EQB has some authority to modify permits, EQB was unwilling to conclude that it could extend the permits to make up for the time lost during litigation with WVDEP. [9]

_____

[8] The situation with DD Oil's permits was similar to the situation where an oil and gas lease requires drilling or production within the primary term of the lease in order to avoid forfeiture and termination of the lease, but the lessor hinders the lessee's performance. In such a scenario, where the lessee has used due diligence, "equitable estoppel effectively extends the lease for the reasonable time that justice may require for the lessee to begin production unhindered and avoid the special limitation." Syl. Pt. 1, *Wilson v. Xander*, 182 W. Va. 342, 387 S.E. 2d 89 (1989). Similarly, W. Va. Code § 36-4-9a (1985) creates a rebuttable presumption of intention to abandon when a property has not been developed within twenty-four months but this presumption does not apply "where the failure to produce and sell is the direct result of the interference or action of the owner of such oil and/or gas or his subsequent lessee or assignee [.]"

[9] During the hearing, the following colloquy occurred between one of DD Oil's counsel and a member of EQB:

> Mr. Umina: "…this is kind of a case of first impressions [sic] before this Board in terms of what is its ability to modify permits?
>
> …it would be an absurd result to think…the only time the Board can modify a permit is at the time it's issued or denied. And the DEP can do whatever it wants during your permit period, but if you are aggrieved and it interferes with you utilizing your permit, then the Board cannot modify it. That is a completely absurd interpretation.
>
> Plain language reading of that statute clearly gives this Board the ability to modify, and equity demands it."

Members of the EQB were clearly troubled by the fact that WVDEP had waited until shortly before the hearing to change its position and annul the NOVs and vacate Order 2022-6 after persistently opposing DD Oil's efforts to develop its sites for over a year.

> Mr. Weiler put it this way before the EQB withdrew to deliberate:
>
> … I know that DEP put you…in a difficult position because all of a sudden out of nowhere the day before the hearing, they wipe their hands of everything like nothing ever happened.
>
> … if they're wiping out the notice of violations, then if you go back to the time when those were issued, and then work your way forward, look at all the stuff that happened to DD Oil and what they had to go through at the time. That's what's concerning.
>
> I went to the University of Tennessee, and they used to have a saying, "the big orange screw" is when the school screwed you, whether it would be registering for classes or whatever, … that's what they called it, "the big orange screw." This looks like the DEP screw.

Hearing Transcript at 43, D.R. 437.

---

> Mr. Weiler: " …I don't think you're going to see the Board making cases of first impression. We leave that to Circuit Courts and Supreme Courts and the Legislature to change regs or statutes, but it's an interesting thought."

Hearing Transcript at 45, D.R. 439.

After deliberating, the EQB announced its decision that it did not have the authority to extend the permits because the matter had been mooted by the annulment of the NOVs and the vacation of Order 2022-6. Nonetheless, the members felt that DD Oil had been poorly treated, and that the parties should try to work something out. In the words of Chairman Snyder:

> It does seem that by dropping the NOVs, it would almost seem appropriate to restart the clock for DD Oil, but we do not have the authority to cause that to occur, but that was—in our discussions, it seemed to be a poor way to deal.

*Id*. at 46-7.[10]

Mr. Weiler concurred, saying:

> …the Board has unanimously voted to dismiss this appeal, the issue being moot. The Board does not have the authority to modify the permit under the circumstances presented.

> But I note, **all the Board felt that the DEP should work with DD Oil to extend permits and… try to make up for the havoc that's been caused in this matter**, … some due to no fault of DD Oil, but it seems like you'd want to work something out.

---

[10] Chairman Snyder also said that:

> —I would think of it as a fair and appropriate thing if there could be dialogue between DEP and DD Oil to see if there could be some sort of fair resolution, considering that there were probably issues on both sides, but it would be nice to see something appropriate worked out.

Hearing transcript at 48, D.R. 442.

…we just don't feel—the Board doesn't feel it has the authority to grant the relief that you're requesting, and that the fact that all NOVS have been withdrawn, … that's what we're here for in the first place, understanding all the circumstances and procedural history in this matter.

*Id*. at 47, D.R. 441 (emphasis added).

On July 25, 2022, the EQB entered its Final Order dismissing DD Oil's appeal as moot because Order 2022-6 had been vacated and the NOVs had been annulled, thereby allegedly depriving it of subject matter jurisdiction. DD Oil timely appealed from this order.[11] Following oral argument, pursuant to this Court's request, the parties subsequently provided supplemental briefing concerning the relief requested by DD Oil in the proceedings below, including modification of DD Oil's permits, injunctive relief, and declaratory ruling, and the respective positions of the parties regarding the scope and extent of EQB's authority.

## II.     STANDARD OF REVIEW

Our review of agency decisions in contested cases is governed by West Virginia Code § 29A-5-4(g) (2021) which provides that:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been

---

[11] After this appeal was filed, DD Oil sued WVDEP in federal court seeking damages for violation of its due process rights. The Court understands that this federal action has been settled and dismissed. The terms of the settlement are unknown and irrelevant to our decision. During oral argument, the Court was also informed that DD Oil had obtained new permits for its wells.

prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(h) The judgment of the circuit court or the Intermediate Court of Appeals, whichever is applicable, shall be final unless reversed, vacated, or modified on appeal to the Supreme Court of Appeals of this state in accordance with the provisions of § 29A-6-1 of this code.

Syl. Pt. 1, *W. Va. Land Res., Inc. v. American Bituminous Power Partners, LP,* 248 W. Va. 411, 888 S.E.2d 911 (2023). "While the court must give deference to the administrative agency's factual findings and review those findings under a clearly wrong standard, the court applies a de novo standard of review to the agency's conclusions of law." *Comm'r of W. Va. Div. of Motor Vehicles v. Brewer*, No. 13-0501, 2014 WL 127540, at *3 (W. Va. March 28, 2014); *accord* Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E. 2d 518 (1996).

## III. DISCUSSION

### A. EQB Had Authority to Extend DD Oil's Permits

DD Oil asserts that EQB has authority to issue rulings that modify an order, permit, or official action of the WVDEP or enter an order modifying the terms and

conditions of any permit pursuant to W. Va. Code § 22B-1-7(g)(1) (2023), which states in relevant part:

> (g) After such hearing and consideration of all the testimony, evidence, and record in the case:
> (1) The environmental quality board or the air quality board as the case may be shall make and enter a written order affirming, modifying, or vacating the order, permit, or official action of the chief or secretary, or shall make and enter such order as the chief or secretary should have entered, or shall make and enter an order approving or modifying the terms and conditions of any permit issued;

We agree.

As the court recognized in *W. Va. Land Res., Inc. v. American Bituminous Power Partners, Ltd.*, 248 W. Va. 411, ___, 888 S.E.2d 911, 920 (2023), "The Legislature plainly authorized the EQB to modify permits issued by the DEP." Under this statute, the EQB could have extended the DD Oil permits by the roughly twelve months (at the time of the hearing) that WVDEP had prevented it from developing and operating its wells.

WVDEP argues that even if the Board had authority to modify the permits as requested, a request to do so should have been made within thirty days of when the permits were issued. This argument ignores the fact that there was no need to modify the permits by extending them until WVDEP spent more than a year preventing DD Oil from developing its well sites pursuant to those permits.

14

**B. EQB Had Authority to Determine Whether the Permits Were Still Valid**

In addition to an extension of its permit, DD Oil requested declaratory relief in the proceedings below. Among other things, DD Oil's Appeal from Order and Annulment Review requested:

> 1. The entry of an Order declaring that the WVDEP's request for form WR-35 is premature for the Subject Wells; 2. The entry of an Order declaring that the DD Oil's permits for the Subject Wells are still valid; … 5. The entry of an Order declaring that the DD Oil's permits for the Subject Wells were valid at all times mentioned herein; …

EQB is an administrative agency for purposes of the Administrative Procedures Act ("APA"), *see Monongahela Power Co. v. Chief, Office of Water Res., Div. of Env't Prot.*, 211 W. Va. 619, 627-28, 567 S.E. 2d 629, 637-38 (2002); *Cookman Realty Group, Inc. v. Taylor*, 211 W. Va. 407, 566 S.E. 2d 294 (2001) (Albright, J., concurring); *see generally* W. Va. Code § 29A-1-2 (2015) ("For the purposes of this chapter: (a) 'Agency' means any state board, commission, department, office or officer authorized by law to make rules or adjudicate contested cases, except those in the legislative or judicial branches."), and that Act authorizes agencies to issue declaratory rulings. *Hicks v. Mani*, 230 W. Va. 9, 16, 736 S.E. 2d 9, 16 (2012).

W. Va. Code § 29A-4-1 (1964) provides that: "On petition of any interested person, an agency may issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforceable by it." In the case at bar,

15

there appears to have been a serious disagreement concerning the application of various statutes pertaining to oil and gas permits, as demonstrated by an August 13, 2021, e-mail from Rodeheaver to Martin, et al, which reads in part as follows:

> Is "drilling process" defined anywhere? Mr. Dale says his drilling process is ongoing and continuous and there has not been a stoppage of 7 months or more. It includes fracking.
>
> Plus "Completion of the drilling process" mentions a drilling rig. I do not see where a drilling rig is defined. … [Mr. Dale] also could not define what drilling was. It was too complicated and included too many things, not to mention upstream, midstream and downstream. …
>
> Doug indicated Mr. Dale had a service rig –not a drilling rig— sitting there at least some of the time.
>
> Plus Mr. Patterson insisted DEP's interpretation of 35-4-5.2.g and 5.2.j and 22-6-30 were flat out wrong or irrelevant.

Appendix at 194. Thus, the EQB erred as a matter of law in concluding that DD Oil's appeal was moot because it could have granted relief in the form of a declaratory ruling.


### C. The Annulment of the NOVs Did Not Moot DD Oil's Appeal Because EQB Could Still Grant Some Relief in the Form of Extending DD Oil's Permits and/or Determining Whether the Permits Were Still Valid

In its Notice of Appeal to the EQB, DD Oil requested various kinds of relief, including annulment of the NOVs and an extension of its permits to allow completion of the permitted well work. Annulment of the NOVs did not prevent EQB from providing additional relief clearly requested in the form of extending the permits and/or determining

16

whether they had expired.[12] A case only "becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party; as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." James Buchwalter, Annotation, *Supreme Court Jurisprudence on Mootness Doctrine of United States Constitution, article III*, 52 A.L.R. 3d Art 5 (originally published in 2020); *accord Chafin v. Chafin*, 568 U.S. 165 (2013); *Knox v. Serv. Employees*, 567 U.S. 298 (2012); *see Uzuegbunam v. Preczewski*, 592 U.S. ___, 141 S.Ct. 792 (2021) (case was not moot even though the defendant college had changed its free speech policies and the plaintiff was no longer a student there because the plaintiff could still recover nominal damages of one dollar); *Bolyard v. Bd. of Educ. of Grant Cnty*, 214 W. Va. 381, 383 n.1, 589 S.E. 2d 523, 525 n.1 (2003) (case was not moot where plaintiff sought damages for lost days of employment and retirement benefits as well as declaratory relief and mandamus). Thus, the EQB erred as a matter of law in concluding that DD Oil's appeal was moot because it could have granted relief in the form of extending DD Oil's permits and/or issuing a declaratory ruling.

---

[12] WVDEP also argues that the vacation of Order 2022-6 left nothing to appeal from, but Order 2022-6 was still in force when DD Oil's Notice of Appeal was filed. Once an appeal was filed, the question then became whether WVDEP's actions, including the vacation of Order 2022-6, rendered the appeal moot.

**D. Even if DD Oil's Appeal Was Technically Moot, It Was Still Capable of Review Under One or More Exceptions to Mootness**

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010). Mootness is a jurisdictional question, and moot questions are usually not proper for appellate review. *State ex rel. W. Va. Secondary School Activities Comm'n v. Cuomo*, ___ W. Va. ___, ___, 880 S.E.2d 46, 53 (2022). Courts, however, have recognized various exceptions to this rule.

In Syllabus Point 1 of *State ex rel. M.C.H. v. Kinder*, 173 W. Va. 387, 317 S.E.2d 150 (1984), the Supreme Court of Appeals of West Virginia recognized a well-established exception to the mootness doctrine for issues that were capable of repetition but evading review:[13]

> A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

The Court subsequently expanded the analysis for determining whether a technically moot issue could be addressed:

---

[13] This mootness exception was first recognized in *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911). That case, like the present one, involved agency proceedings, to-wit, an ICC order that would expire in two years.

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. Pt. 1, *Israel v. W. Va. Secondary Schs. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989).  It is not necessary for all three factors to be present for a court to find that it has jurisdiction to hear a technically moot case. Just one factor, if compelling, can be sufficient for a court to exercise its discretion to hear an appeal. *See* Syl. Pt. 4*, Loyal Order of Moose v. State Tax Comm'r*, 219 W. Va. 119, 632 S.E.2d 59 (2006) ("Even though an issue may be technically moot, it still may be deserving of judicial resolution by meeting one or more of the following criteria…"); Syl Pt. 6, *W. Va. Educ. Ass'n v. Consol. Pub. Ret. Bd*., 194 W. Va. 501, 460 S.E.2d 747 (1995) (same).[14] As discussed below, the second

[14] In a number of cases, the Supreme Court of Appeals of West Virginia has found one or two factors alone to be sufficient to justify appellate review despite technical mootness. *See*, *e.g*., *T.W.J. v. L.S.A*., no. 15-0817, 2016 WL 5846616, at \*2 (W. Va. Oct. 6, 2016) (sufficient collateral consequences alone justify consideration of the appeal in this Court); *Kasserman and Bowman, PLLC v. Cline,* 223 W. Va. 414, 416 n.5, 275 S.E. 2d 890, 892 n. 5 (2009) (issue of great public importance which was capable of repetition yet evading review justified review); *State ex rel. Crist v. Cline*, 219 W. Va. 202, 632 S.E.2d 358 (2006) (issues of great public interest and subject to repetition but evading review justify consideration by the Court); *Affiliated Const. Trades Found. v. Univ. of West Virginia Bd. of Trs.*, 210 W. Va. 456, 557 S.E. 2d 863, 872 (2001) (public interest in whether state funds were expended in violation of state prevailing wage laws allowed court to hear technically moot case);  *State ex rel. Davis v. Vieweg*, 207 W. Va. 83, 86-7, 529 S.E. 2d 103, 106-07 (2000) (question of great public interest and capable of repetition);

and third factors would have justified exercising jurisdiction in this case.[15] Unfortunately, the EQB apparently believed that it had no power to consider DD Oil's appeal.[16]

In addition, many courts recognize an exception for "voluntary cessation"[17] where a party withdraws a claim, ceases a course of conduct, or amends or repeals a law before it can be addressed by pending litigation. *See*, *e.g.*, *U.S. v. W. T. Grant*, 345 U.S. 629 (1953); *Snell v. Walz*, 985 N.W.2d 277 (Minn. 2023); *Slade v. State*, *Dept. of Transp.*

---

*State ex rel. W. Va. Secondary Sch. Activities Comm'n v. Cuomo*, No. 22-0261, 2022 WL 16570555, at *5 (W. Va. Nov. 1, 2022) (satisfaction of the second and third *Israel* factors suffice to grant the Court jurisdiction over a technically moot case).

[15] In *J.F. v. G.R.*, 2022 WL 17592199 (W. Va. Dec. 13, 2022) (memorandum decision), the court declined to exercise jurisdiction even though the issue was capable of repetition yet avoiding review. Although this opinion might be read as requiring that all three factors must be established, we do not find it likely that the court would have overruled its prior cases without expressly saying so, especially in a short memorandum decision. It is more likely that the court merely found the capable of repetition factor to be unpersuasive in that particular case. This conclusion is supported by language in the recent case of *Gray v. State*, No. 22-0367, 2023 WL 6862171, at *2 (W. Va. Oct. 18, 2023) (memorandum decision) where the court stated "that technically moot cases that present 'questions of great public interest' **or** issues that 'may be repeatedly presented to the trial court, yet escape review at the appellate level,' may be addressed." (Emphasis supplied). In that case, review was denied because the issue did not meet "either criterion." Furthermore, in *W. Va. Secondary Schs Activities Comm'n v. J.G.*, 2023 WL 6863416, at *1 n.3 (W. Va. Oct. 18, 2023) (memorandum decision), the court reviewed an appeal because "[t]he second and third *Israel* considerations favor[ed] resolving the question before [it]."

[16] This is not a case where EQB recognized that exceptions to the mootness doctrine might apply and chose in the exercise of its discretion not to apply them. It is clear from the record that it erroneously believed that it had no authority to review WVDEP's actions even though it found them to be patently unfair.

[17] "Voluntary cessation" is sometimes referred to as "unilateral mootness." See Scott T. MacGuidwin, *Mooting Unilateral Mootness*, 121 Mich. L. Rev. 641 (Feb. 2023).

*& Pub. Facilities*, 336 P.2d 699 (Alas. 2014); *WMW, Inc. v. American Honda Motor Co., Inc.*, 733 S.E.2d 269 (Ga. 2012); *Stano v. Pryor,* 372 P.3d 427 (Kan. Ct. App. 2016); *Wilkie v. Hartford Underwriters Ins. Co.*, 494 P.2d 892 (Mont. 2021); see *generally* 16 C.J.S. *Constitutional Law* §225, Westlaw (database updated August 2023). The availability of this exception to technical mootness appears to be a question of first impression in this state.[18] Given our holding that the "capable of repetition yet evading review" and "question of great public interest" exceptions apply in this matter, we need not decide whether the "voluntary cessation" exception should be recognized in West Virginia.

### 1. DD Oil's Appeal Was Reviewable Because It Involved a Question of Great Public Interest

This matter presented the question of whether EQB could modify permits so as to extend them when WVDEP's litigious actions had prevented an operator from developing duly permitted well sites.

---

[18] In *State Farm Mut. Ins. Co. v. Schatken*, 230 W. Va. 201, 737 S.E.2d 229 (2012), the court was urged to adopt the voluntary cessation exception, in addition to applying the already recognized exceptions for issues that were "capable of repetition and yet will evade review" and issues of "great public interest." The court did not take up this invitation, concluding that "the mootness doctrine and its exceptions [were] inapplicable" because the case had never been "ripe" for decision to begin with. *Id.* at 211 n.6, 737 S.E. 2d at 238 n. 6. Thus, it could not have become moot, and there was no need to address possible exceptions to mootness.

## 2. DD Oil's Appeal Was Reviewable Because the Dispute Was Capable of Repetition Yet Evading Review

Although WVDEP annulled its NOVs on a procedural ground (that a site inspection was not done during the annulment review), it continued to assert that the permits were no longer valid. It never abandoned its position that the permits had expired because drilling operations had ceased for thirty continuous days, even though this was hotly contested by DD Oil. Nor did it change its position that WR-35 Forms should have been filed. Moreover, WVDEP did not take heed when counsel for Reliance Well Services/DD Oil warned that telling service providers that they should not work on the site because DD Oil allegedly did not have valid permits might constitute contempt and expose it to liability for punitive damages in litigation. Furthermore, DD Oil has alleged that WVDEP engages in a practice of contesting the validity of permits so that oil well operators will be forced to obtain new permits and pay additional permit fees.[19] When WVDEP was faced with a hearing, it finally annulled its NOVs and vacated its 2022-6 order on procedural grounds, arguably in order to avoid review on the merits. Nor should we lose sight of the fact that WVDEP had already issued two sets of NOVs and two orders to cease operations for the subject wells.

---

[19] DD Oil points out that on August 13, 2021, Scott Rodeheaver, the assistant chief of inspection and enforcement of the Office of Oil and Gas, sent an internal email discussing the Ritchie County litigation with DD Oil and noting that "a number of people had to find other jobs in the past year because permit fees were down. If a permit is not needed neither is the Office of Oil and Gas." D.R. 194.

Given this history, there was a sufficient likelihood that WVDEP would issue additional NOVs if DD Oil attempted to develop its well sites without obtaining new permits to justify appellate review under the capable of repetition exception. *See generally Minn-Dak Farmers Co-op. v. Espy*, 851 F. Supp. 1423, 1426 (D. N.D. 1994) ("When an administrative agency withdraws the offending order and yet continues to maintain its action was legal, 'repetition is likely' and the claim should not be considered moot."); *Natural Resources Defense Council. Inc. v. EPA*, 595 F. Supp. 1255, 1263 (S. D. N.Y. 1984) ("…when an administrative agency withdraws an order while still maintaining that the legal position is justified, repetition is likely and the claim should not be considered moot."); *Doe v. Harris*, 696 F.2d 109, 113 (D.C. Cir. 1982) ("when a complaint identifies official conduct as wrongful and the legality of that conduct is vigorously asserted by the officers in question, the complainant may justifiably project repetition.").

Under the capable of repetition yet evading review exception, the EQB could have addressed DD Oil's appeal even if the matter became technically moot while the appeal was pending. *See Kasserman and Bowman*, *PLLC v. Cline*, 223 W. Va. 414, 416 n. 5, 675 S.E. 2d 890, 892 n. 5 (2009) (technically moot petition for declaratory relief could be addressed on appeal because matter involved an issue of great importance that was capable of repetition yet evading review). The fact that the order in question was vacated by WVDEP on the eve of hearing did not preclude appellate review where the issues were capable of repetition. *See Anderson v. Cryovac*, 805 F.2d 1, 4-5 (1st Cir. 1986) (holding that an appeal involving a pretrial protective order limiting disclosure of discovery

23

information before a jury was selected did not become moot when the order was vacated because the issue was capable of repetition).

### E. Our Review Was Not Mooted by DD Oil's Obtaining New Permits

Although the parties have not addressed this point in their briefs or oral argument, we conclude that our review is not precluded by DD Oil obtaining new permits.[20] Even if the issues presented are now technically moot, this appeal involved issues of great public interest, and were also capable of repetition yet avoiding review. We note in this regard that DD Oil is a major developer of oil and gas wells, having drilled more than fifty wells and operated as many as two hundred wells. It operates, and likely will continue to operate, many wells in addition to the ones directly at issue in the appeal, and the same issues may arise again. Given the record on appeal, we are unable to determine whether there might be any collateral consequences flowing from actions of WVDEP regarding the original permits, or any further relief that the EQB might be able to furnish in this particular case. These are issues which the parties may develop on remand.

---

[20] Regardless of whether the issue is raised by the parties, this court has a duty to consider whether it has subject matter jurisdiction. Syl. Pt. 2, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E. 2d 16 (1995).

## IV.     CONCLUSION

The ruling of the EQB is reversed and remanded for such further proceedings as may be necessary and appropriate, consistent with our rulings, to evaluate and correct its prior rulings.

Reversed and Remanded.